IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TENNESSEE VALLEY AUTHORITY | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 01-249-C |
| | ) | (Judge Lettow) |
| UNITED STATES | ) | |
| | ) | |
| Defendant | ) | |

**TVA'S SUPPLEMENTAL BRIEF**

**STATEMENT**

Pursuant to the Court's February 3, 2004 Order, Plaintiff Tennessee Valley Authority (TVA) hereby submits its supplemental brief on the issues raised by the parties' partially dispositive motions. As discussed below, TVA agrees, for purposes of the motions, to use the spent nuclear fuel (SNF) acceptance rate advocated by the Department of Energy (DOE) and the Government for the period 1998-2007; and TVA also agrees the parties must adhere to the Standard Contract's Delivery Commitment Schedule (DCS) process. Further, in view of the Government's recent filing in a related action, it now appears that the parties agree as well regarding the scope of damages in this action.

Accordingly, the acceptance rate issues that remain for decision in this case are: (1) whether the Government may avoid liability as a result of DOE's unilateral decision not to follow the DCS process; and (2) whether TVA has shown but-for causation (i.e., but for the Government's breach in failing to begin picking up SNF by January 1, 1998, TVA would not have had to build dry storage facilities). As

to Greater Than Class C (GTCC) radioactive waste, the Court must decide whether the GTCC issue is moot given the absence of any claim by TVA and, if not, whether DOE is obligated by the Standard Contract to remove any GTCC that TVA someday might have.

**THE ACCEPTANCE RATE ISSUES**

The Government's current position is that DOE's 1995 Acceptance Priority Ranking and Annual Capacity Report (APR/ACR) provides the ten-year schedule (1998-2007) which "the Court should view as the contractual 'schedule' for purposes of assessing damages" (Def. Supplemental Br. at 8); that "the DCS provisions in the Standard Contract have meaning and . . . provide the basis for establishing the acceptance schedule for use in establishing damages" (*id*. at 3); and that a condition precedent to any DOE obligation is an "approved" DCS (*id*. at 7). Thus, the Government's supplemental brief criticizes the *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 659 (2003); *Indiana Mich. Power Co. v. United States*, 57 Fed. Cl. 88, 89 (2003); and *Yankee Atomic Elec. Co. v. United States*, No. 98-126-C (Fed. Cl.), decisions because the "decisions in all three cases eliminate the existing schedule terms from the Standard Contract" (*id*. at 4).

However, the Government's extended discussion is essentially irrelevant to this action. This is so because, alone among the utilities who participated in coordinated discovery managed by Judge Sypolt, TVA agrees that the acceptance rate schedule advocated by the Government may be used as the benchmark against which to

determine cause-in-fact liability and measure damages.[1] Similarly, TVA also has agreed that the parties must adhere to the DCS submittal process set forth in the Standard Contract, and the record is clear that TVA routinely submitted DCS forms which sought approval for SNF acceptance in the years and amounts previously allocated to TVA by DOE (Def. App. at 454-468; Def. Supplemental App. at 190).

Thus, for motion purposes, TVA's position mirrors that of the Government except for TVA's disagreement, under the circumstances present here, that an approved DCS is a condition precedent to recovery. It is undisputed here that the reason TVA has no approved DCSs is because DOE early in 1997 (on advice of counsel based on liability considerations) refused to approve all utility DCS submittals, stating only that DOE is "not able at this time to approve your DCS submittal" (e.g., Def. App. at 365, 397, 456; see also, Pl. Summ J. Br. at 10-11, 21-24).[2] Accordingly, the Court must determine whether the Government is shielded from liability by DOE's unilateral determination to abrogate the DCS process and refuse to approve DCSs submitted in accordance with the Standard Contract's terms and in accordance with the amounts allocated by DOE's 1995 APR/ACR.[3]

---

1 As shown by the uncontroverted declaration of Thomas L. Hayslett, Jr., TVA would not have had to build dry storage facilities at its Brown Ferry and Sequoyah Nuclear plants had acceptance operations begun no later than January 31, 1998 in accordance with DOE's 1995 APR/ACR allocations and acceptance schedule (¶ 4 & ex. 1).

2 The Standard Contract required that DOE approve or disapprove DCS submittals within three months of receipt and permit resubmittal in the event of disapproval (TVA App. at 11).

3 DOE routinely approved utility submittals made in accordance with DOE's allocations until 1997 (see, e.g., Def. proposed findings of fact Nos. 98-105).

It is TVA's position that **both** parties are required to follow the dictates of the Standard Contract and that DOE's conduct is legally inexcusable regardless of whether the Court (a) simply refuses to countenance the Government's self-serving attempt to limit its liability exposure, (b) looks to the prevention doctrine as the basis for rejecting the Government's condition precedent argument, (c) treats DOE's inaction as a waiver of any right to object to TVA's DCS submittals, or (d) views DOE's conduct as a breach of the implied covenant of good faith and fair dealing, (Pl. Summ. J. Br. at 21-24; Pl. Surreply Br. at 4-7).

**PROOF OF DAMAGES**

Through the close of fiscal year 2003, TVA's damages amounted to $24,590,966.81, which represents the costs TVA has incurred in constructing dry storage facilities at TVA's Sequoyah and Browns Ferry Nuclear Plants. The overwhelming majority of these costs consist of payments made to third-party contractors. The Government has refused TVA's invitation to audit these incurred costs.[4]

Because the Government has yet to announce precisely when and in what amounts it will begin picking up TVA's SNF, TVA's position is that, given the Government's continuing breach, proof of damages should reflect expenses already incurred as of a date certain, with TVA retaining the ability to bring future actions for subsequently incurred expenses resulting from the continuing breach. Such an approach would significantly reduce trial time (if the issue cannot be resolved on

---

[4] Of course, delay in resolving damages issues favors the Government as prejudgment interest appears to be unavailable.

summary judgment) and would obviate the need for expert testimony regarding such disparate issues as the types and amounts of expenses that will be incurred (ranging, for example, from light bills, to security requirements, to the number and amount of storage casks necessary, to the date upon which DOE's continuing breach will end, etc.). Also, this approach is fundamentally fair to both parties in that TVA will recover, and DOE will pay, only those costs actually incurred as a result of the breach.

In a February 27, 2004 filing (Defendant's Motion for Leave to Notify the Court of Argument to be Raised at Trial or, in the Alternative, In Limine (Mot.)) in the *Indiana Michigan* case (No. 98-486-C), the Government indicates its agreement with TVA's approach. In its motion, the Government, argues that damages for a partial breach of contract are limited to those that already have been incurred, that, to the extent "additional partial breaches occur in the future," plaintiff can "seek appropriate relief at that time," and that such an approach will "avoid the need for abject speculation about future events" (Def. Mot. at 5-6, 7, & 9).

Accordingly, the Court should rule that proof of damages on summary judgment or at trial should cover costs incurred as of the close of the most recent fiscal year, that TVA has the right to bring future actions for subsequently incurred damages, and that the Court retains continuing jurisdiction over damages issues.

**GTCC**

As noted in TVA's initial brief, TVA has no material classified as GTCC and is not currently claiming damages based on DOE's failure to accept GTCC waste. Under similar circumstances, two other judges of this Court now have refused to rule on the issue, finding the Government's GTCC motion "[m]oot" (Judge Hodges)

or "not 'concrete'" (Judge Hewitt) due to the lack of a claim by the plaintiff utility. *See Indiana Mich. Power Co. v. United States*, 57 Fed. Cl. at 100; *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. at 659. Finally, the fact that the Government's motion will be decided in other pending SNF actions also militates against any need for a decision in this action. [5]

**CONCLUSION**

For the reasons stated and upon the authorities cited, TVA's Motion for Summary Judgment on the acceptance rate and GTCC issues should be granted, and the Government's motions should be denied as mooted by the granting of TVA's motion. The Court also should rule that proof of damages may be made through the most recently closed fiscal year with TVA retaining the right to bring additional actions for subsequent damages incurred and with the Court retaining jurisdiction over future

---

[5] For example, the *Yankee Atomic*, *Maine Yankee Atomic*, and *Connecticut Yankee Atomic* cases scheduled for trial this summer before Judge Merow involve GTCC damages claims.

damages claims. Finally, the Court should order a scheduling conference covering discovery on damages issues, the filing of pretrial submissions, and the setting of a trial date.

Respectfully submitted,

March 18, 2004

Maureen H. Dunn
General Counsel

Edwin W. Small
Assistant General Counsel

s/Peter K. Shea__________
Peter K. Shea
Senior Attorney
Telephone 865-632-7319

Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Facsimile 865-632-6718

003709549

Attorneys for Tennessee Valley Authority