IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-249C |
| | ) | (Judge Lettow) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR RECONSIDERATION
OF THE COURT'S JUNE 2, 2004 ORDER

Pursuant to Rule 59(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court to reconsider two portions of its decision in this case, dated June 2, 2004, as more fully identified below.

ARGUMENT

I. STANDARD OF REVIEW

The decision to grant a motion for reconsideration is at the sound discretion of the Court. Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). To prevail upon a motion for reconsideration, "the movant must point to a manifest (*i.e.*, clearly apparent or obvious) error of law or a mistake of fact." Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002); see Coconut Grove Entm't, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999).

II. THE PORTIONS OF THE COURT'S JUNE 2, 2004 DECISION AT ISSUE

In its June 2, 2004 decision, the Court made two findings that the parties have not yet briefed in this particular case. The Court apparently based its findings in part upon the parties' discussion at oral argument about the Government's arguments in Indiana Michigan Power Co. v.

United States, No. 98-486C (Fed. Cl.). First, the Court appears to have determined that a plaintiff may recover damages in a partial breach of contract case prior to the date upon which the actual partial breach of contract occurs. After recognizing that the Department of Energy was not obligated to begin spent nuclear fuel ("SNF") acceptance from the nuclear utility industry until January 31, 1998, the Court noted as follows:

> Nonetheless, DOE notified all of the utilities in 1995 that it would not begin collection of SNF on time, which position was born out by its refusal to act upon proposed DCSs beginning in 1997. When it became obvious to TVA that DOE would not perform under the contract, TVA was justified, indeed obligated, to take steps to minimize its losses in light of DOE's imminent non-performance. "Once a party has reason to know that performance by the other party will not be forthcoming . . . he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise."

Opinion, at 12-13 (June 2, 2004) (emphasis added; citations omitted). Second, the Court appears to have determined that TVA's actions in building dry storage facilities on-site after the Department of Energy announced that it would not be able to begin SNF acceptance in 1998 was a reasonable mitigation activity:

> TVA's construction of dry storage facilities for spent nuclear fuel at its Brown Ferry and Sequoyah nuclear plan[t]s must be viewed as an affirmative step toward mitigation to avoid loss for the government's partial, ongoing breach. Accordingly, to the extent that TVA is able to show at trial that it has incurred damages as a result of DOE's failure to act upon the proposed DCSs and its failure to collect SNF, TVA may recover those damages.

Opinion, at 13 (June 2, 2004). For the reasons explained below, we respectfully request that the Court reconsider its decision regarding these two apparent findings.

## III. THE COURT SHOULD RECONSIDER ITS RULING THAT TVA CAN RECOVER DAMAGES INCURRED PRIOR TO THE PARTIAL BREACH OF CONTRACT UNDER A "MITIGATION" THEORY

### A. Because TVA Is Not Claiming Damages Incurred Prior To January 31, 1998, The Court Need Not Rule Upon TVA's Right To Recover Damages Incurred Prior To That Date

To the extent that the Court views the "partial breach" at issue in this case as DOE's inability to begin SNF acceptance from the contract holders as a whole on January 31, 1998, TVA is not claiming any damages that precede that date. Specifically, in the damages claims that it has submitted to the Government, TVA does not claim any damages that precede 1998. Accordingly, the Court's ruling regarding costs incurred prior to January 31, 1998, appears unnecessary to this litigation, and, because the ruling conflicts with established case law discussed below, we respectfully request that the Court strike it from its opinion.

### B. Because It Seeks Continued Performance Of The Standard Contract, TVA, To The Extent It Seeks Pre-Breach Damages, Would Not Be Able To Recover Damages For Costs That It Incurred Prior To The Department Of Energy's Partial Breach Of The Contract

#### 1. A Claim For Partial Breach Of Contract Differs From A Claim For A Total Breach

"When one party to a contract materially breaches his duties under the contract, the other party may proceed in one of two ways." S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992). "He can either consider the contract terminated and sue for total breach, or he can continue his performance and sue for partial breach." Id. That is, a claim for partial breach is one for damages based upon "only part of the injured party's remaining rights to performance," while a claim for damages for total breach is "one for damages based on all of the injured party's remaining rights to performance." San Carlos Irrigation & Drainage Dist. v. United States, 23

Cl. Ct. 276, 279 (1991) (citations omitted), aff'd, 111 F.3d 1557 (Fed. Cir. 1997). Consequently, the damages recoverable for a partial breach of contract are necessarily less than those recoverable for a total breach. See Roboserve, Inc. v. Kato Kagaku Co., 78 F.3d 266, 279 (7th Cir. 1996) (concluding that the jury's determination that damages for partial breach of contract exceeded those for total breach was "obviously irrational"). In awarding damages for breach of contract, a fact-finder therefore has to "differentiate between a total or material breach on the one hand and a partial breach on the other, and to measure damages, if any, according to the nature of the breach." Lovink v. Guilford Mills, Inc., 878 F.2d 584, 587 (2d Cir. 1989). The distinction between partial and total breach "is particularly important in executory contracts." Id. at 586.

Aside from the different measure of damages applicable to a partial and total breach, these claims can also be distinguished based upon the remedies they provide to an injured party. Indeed, a plaintiff's decision to continue a contract after a material breach and initiate an action for damages for partial breach is not "without consequences." PVI, Inc. v. Ratiopharm, 253 F.3d 320, 325 (8th Cir. 2001). A "total breach justifies termination of the contract and damages for complete failure of performance," whereas a "partial breach does not." Lovink, 878 F.2d at 587; see Pinewood Realty Ltd. P'ship v. United States, 223 Ct. Cl. 98, 104, 617 F.2d 211, 215 (1980) ("[i]f the injured party ignores the breach, and continues to perform, it has waived its right to terminate the contract, and has only retained its claim for damages for partial breach"); Hanson Bancorp, Inc. v. United States, 53 Fed. Cl. 92, 100 (2002) ("[a] breach by non-performance gives rise to a claim for damages for total breach only if it discharges the injured party's remaining duties to render such performance"). As the Court held in Cities Service Helix, Inc. v. United States, 211 Ct. Cl. 222, 543 F.2d 1306 (1976), a contractor must make an election in response to

an anticipatory breach either to view the contract as concluded or to continue contract performance:

> A material breach does not automatically and *ipso facto* end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it. If he decides to close the contract and so conducts himself, both parties are relieved of their further obligations and the injured party is entitled to damages to the end of the contract term (to put him in the position he would have occupied if the contract had been completed). If he elects instead to continue the contract, the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach.

Id. at 234, 543 F.2d at 1313; accord Barron Bancshares, Inc. v. United States, 53 Fed. Cl. 310, 323 (2002).

Here, TVA's decision to continue the contract after the Government's breach and insist upon the Government's performance of its obligations has at least two consequences. First, because the Government's contractual obligations were not discharged as a result of TVA's suit for partial breach, it did not discharge the Government's ultimate obligation to accept and dispose of TVA's SNF. Second, it limited TVA's recovery of damages to those for partial breach. The significance of the second consequence of TVA's election to pursue a partial rather than total breach theory is material here because damages recoverable for partial breach begin to accrue later than, and are necessarily less than, those for total breach.

2. Under A Partial Breach Claim, A Plaintiff Cannot Rely Upon An Anticipatory *Partial* Repudiation Theory To Recover Damages That Precede The Actual Partial Breach

Generally, regardless of whether a claim is for a total or a partial breach of contract, "breach of contract damages are measured from the date of the breach." Lucente v. International

Bus. Machines Corp., 310 F.3d 243, 262 (2d Cir. 2002) (applying New York law) (emphasis added); see Reynolds v. United States, 141 Ct. Cl. 211, 220, 158 F. Supp. 719, 725 (1958) ("[t]he time when performance should have taken place is the time as of which damages are measured").[1] Accordingly, TVA's damages "are to be measured from" the date of the breach. Yet, in the Court's June 2, 2004 decision, the Court indicated that, based upon DOE's representations in 1995 regarding its inability to begin SNF acceptance in 1998, TVA was entitled to begin mitigating its damages at that point in time. The only basis upon which a contractor can seek damages that precede a breach of contract depend upon the existence of an "anticipatory" breach or repudiation of the contract by the breaching party. Yet, for the reasons explained below, that doctrine does not apply in the context of a partial breach case and, therefore, would provide no basis for a recovery of damages incurred prior to the partial breach.

An anticipatory repudiation is a "renunciation of a contractual duty *before* the time fixed in the contract for performance." Franconia Assocs. v. United States, 536 U.S. 129, 143 (2002) (emphasis in original). It "entails a statement or voluntary affirmative act indicating that the promisor will commit a breach when performance becomes due." Id.; see Danzig v. AEC Corp., 224 F.3d 1333, 1337 (Fed. Cir. 2000) ("[a]t common law, anticipatory repudiation of a contract required an unambiguous and unequivocal statement that the obligor would not or could not perform the contract"); Tretchick v. Department of Transportation, 109 F.3d 749, 752 (Fed. Cir.

---

[1/] That damages for a breach action accrue from the date for performance specified in the contract is also evident from precedent on sale of goods and supply contracts. See, e.g., Hess Energy, Inc. v. Lightning Oil Co., 338 F.3d 357, 363 (4th Cir. 2003) (when a seller anticipatory repudiates a sale of goods contract governed by the Uniform Commercial Code, "the aggrieved buyer's damages against a repudiating seller are based on the market price on the date of performance–the date of delivery."); Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 825 (2d Cir. 1990) ("the loss caused by a breach is determined as of the time of breach").

1997) (anticipatory repudiation "must be a distinct unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made").

An anticipatory repudiation of a contract is, in and of itself, a breach of contract that "generally gives rise to a claim for damages for total breach even though it is not accompanied or preceded by a breach by non-performance." Restatement (Second) of Contracts § 253(1) cmt. a (emphasis added); see Wisconsin Power & Light Co. v. Century Indem. Co., 130 F.3d 787, 793 (7th Cir.1997) ("[t]he disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived"). However, an anticipatory repudiation of a contract constitutes a total breach "only if the promisee 'elects to treat it as such.'" Franconia Assocs., 536 U.S. at 143 (emphasis added) (citing Roehm v. Horst, 178 U.S. 13 (1900)). Repudiation "gives the promisee the right of electing either to treat the declaration as *brutum fulmen*, and, holding fast to the contract, to wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract." Roehm, 178 U.S. at 13. Therefore, to recover damages for an anticipatory repudiation, the injured party must "elect to treat" the repudiation as a total breach. Franconia Assocs., 536 U.S. at 143; see United States v. Dekonty Corp., 109 F.3d 749, 752 (Fed. Cir. 1991) (injured party who elects to sue for anticipatory breach of contract must "treat th[e] refusal [to perform] as a breach and commence an action at once therefor").

Nevertheless, "a breach by repudiation alone can only give rise to a claim for total breach . . .," effectively ending any further performance obligations by the contracting parties.

Restatement (Second) of Contracts § 253 cmt. b (emphasis added). A party cannot seek damages for a total breach based upon anticipatory repudiation and, at the same time, seek continued performance of the contract. Restatement (Second) of Contracts § 236 cmt. b (1981). Further, "an anticipatory breach cannot be predicated on a partial breach of the contract . . . ." City of Fairfax, Va. v. Washington Metro. Area Transit Auth., 582 F.2d 1321, 1331 (4th Cir. 1978) (emphasis added), cert. denied, 440 U.S. 914 (1979); see Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 648 (2004) (in spent nuclear fuel case, "[a]nticipatory repudiation does not apply in a partial breach situation"), appeal pending, No. 04-5122 (Fed. Cir. docketed July 26, 2004); 4 A. Corbin, Corbin on Contracts § 972, at 901 (1951) ("there seems to be no authority for saying that, for such a partial anticipatory repudiation, an action for damages can be at once maintained"). To the contrary, an anticipatory repudiation gives rise only to a claim for total breach that concludes the parties' further performance obligations.

The Court of Appeals for the Second Circuit's decision in Lucente v. IBM Corp., 310 F.3d 243 (2d Cir. 2002), is instructive on the effect of a partial breach theory on damages. In Lucente, a former executive of IBM had entered into a "letter agreement" with IBM that prohibited him from working for a competitor and provided for cancellation of his stock options in the event of his violation of the agreement. Id. at 249. Two years later, in 1993, Lucente became an executive of Digital Equipment Corporation ("Digital"), a competitor of IBM, and IBM sent a cancellation letter to Lucente informing him that his restricted stock and stock options at IBM were now cancelled as a result of his employment with Digital. Id. at 250. From 1993 to 1999, the value of IBM stock significantly rose. In 1999, Lucente filed a suit against IBM, arguing that IBM's 1993 cancellation letter was an anticipatory repudiation that he elected

to ignore while awaiting IBM's future performance. Id. at 251. In 2001, Lucente attempted to exercise his options by tendering $1.89 million to IBM. IBM rejected Lucente's purported exercise of his options and returned Lucente's check. Subsequently, the district court granted Lucente leave to amend his complaint to treat IBM's cancellation letter as an anticipatory repudiation with respect to his stock options. Id. at 252. Lucente's amended complaint also alleged that IBM's cancellation letter was a breach for the purposes of Lucente's restricted stock. Id. The district court awarded Lucente $4.8 million, concluding that Lucente had properly exercised his stock options.

The Court of Appeals for the Second Circuit reversed, finding that Lucente could not treat IBM's 1993 cancellation letter as both a breach and an anticipatory repudiation that he chose to ignore. The court stated that, "[a]part from allowing Lucente to have his cake and eat it too, such a result is antithetical to the common law percepts of anticipatory repudiation and the election of remedies doctrine." Id. at 258. The court explained that, when confronted with a anticipatory repudiation, the non-breaching party must make a choice:

> When confronted with an anticipatory repudiation, the non-repudiating party has two mutually exclusive options. He may (a) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) he may continue to treat the contract as valid and await the designated time for performance before bringing suit.

Id. (citations omitted). "The non-repudiating party must, however, make an affirmative election" and "'cannot at the same time treat the contract as broken and subsisting,' for '[o]ne course of action excludes the other.'" Id. (citations omitted). Indeed, "[t]he law simply does not . . . permit a party to exercise two alternative or inconsistent . . . remedies." Id. (quoting Apex Pool Equip.

Corp. v. Lee, 419 F.2d 556, 562 (2d Cir. 1969)). "Once a party has elected a remedy for a particular breach, his choice is binding with respect to that breach and cannot be changed." Id. at 258-59.

The court further recognized that, under an anticipatory repudiation theory, a contract holder who elects to treat a repudiated contract as binding and valid waives any action against the repudiating party until an actual breach occurs and can recover damages only for the actual breach:

> Under an anticipatory repudiation theory, a plaintiff who elects to treat a repudiated contract as valid does not have an action against the repudiating party until an actual breach occurs. Since it is undisputed that Lucente failed to take action to exercise any of his stock options before filing this suit, Lucente had no claim for breach against IBM under the theory of anticipatory repudiation. Therefore, the only claim that Lucente could possibly have asserted in 1999 was that IBM breached its contractual obligations by cancelling his restricted stock and stock options in April 1993.

Id. at 259. The court further held that "damages for breach of contract are to be measured *from the date of the breach*." Id. at 262 (emphasis added).

Here, TVA's decision to proceed under a partial breach theory following DOE's breach and not to declare the Standard Contract at an end following some earlier alleged anticipatory repudiation clearly indicates that TVA elected to waive any anticipatory repudiation theory. Had TVA elected to proceed based upon anticipatory repudiation prior to the due date for DOE's performance to TVA, and sought to recover damages accruing from the date of the repudiation, TVA would have had to file its suit at that time and, further, would have to have elected to consider the Standard Contract at an end, eliminating both parties' further performance obligations. However, TVA has sued only for partial breach because it does not want to

discharge DOE's obligation to accept TVA's SNF. Having made this election, TVA cannot now attempt to claim damages both for a partial breach of contract because DOE did not satisfy its obligation to begin SNF acceptance from TVA when required and, at the same time, for an anticipatory total breach of contract at some point earlier than that due date, while also seeking to enforce DOE's continuing performance obligations under the Standard Contract.

Because TVA elected to pursue a partial breach theory in its 1998 suit, TVA cannot recover damages for costs it incurred prior to DOE's breach of its obligation to begin accepting TVA's SNF on the date due for that acceptance. See Franconia Associates, 536 U.S. at 143 (party treats an anticipatory repudiation as a present breach "by filing suit prior to the date indicated for performance," but, otherwise, "breach would occur when . . . [the repudiating party's] responsive performance become[s] due"); Cities Service, 211 Ct. Cl. at 234, 543 F.2d at 1313 & n.16 (once party elects to continue repudiated contract, he retains "only a claim for damages for partial breach"); Dunkin Donuts of Am., Inc. v. Minerva, Inc., 956 F.2d 1566, 1571 (11th Cir. 1992) (franchisee who continued performance after learning of material breach could not seek damages for total breach, and his damages were limited to those for partial breach); Pinewood Realty Ltd. P'ship, 223 Ct. Cl. at 104, 617 F.2d at 215 ("[i]f the injured party ignores the breach, and continues to perform, it has . . . only retained its claim for damages for partial breach").

The purpose of this rule limiting the anticipatory repudiation doctrine to total breach cases is to force the non-breaching party to make a knowing election that indicates to all parties in a timely manner the scope of the parties' continuing obligations and liabilities. Specifically, as discussed above, when faced with an anticipatory repudiation, the recipient of that repudiation

has to make a choice: (1) to claim total breach, end any further performance obligations by either party, and to seek damages for that total breach in a single suit; or (2) to waive the total breach, wait for the due date for performance, to seek damages for a partial failure when performance by that due date is not forthcoming, but to continue the parties' mutual obligations to fulfill their contract obligations (even if delayed). If a party could simply begin incurring costs in response to an anticipatory repudiation and recover those costs as damages, yet still require the repudiating party to continue performing the contract at issue, the recipient of the repudiation would have no incentive to make an election to end or continue the contract. Instead, it would be able both to recover all costs and force the repudiating contractor to continue performance. The requirement to make an election in response to an anticipatory repudiation would be eviscerated, creating great uncertainty about the status of contracts following such repudiations. The Court's finding that TVA could recover damages beginning in 1995, before the due date for DOE's obligation to begin accepting SNF from TVA or, for that matter, from any other contract holder, conflicts with the limitations upon a partial breach claim.

3. TVA Cannot Circumvent The Legal Bar To Recovery Of Its Pre-Breach Damages By Formulating Them As Costs Incurred In The Exercise Of Its Duty Of Mitigation

In its June 2, 2004 decision, this Court determined that DOE had announced in 1995 that it would not begin SNF acceptance from the nuclear utility industry in 1998 and that, "[w]hen it became obvious to TVA that DOE would not perform under the contract, TVA was justified, indeed obligated, to take steps to minimize its losses in light of DOE's imminent non-performance. Opinion, at 12-13 (June 2, 2004). We agree that, "[a]s a general rule, a party cannot recover damages for loss that he could have avoided by *reasonable efforts*." Robinson v.

United States, 305 F.3d 1330, 1333 (Fed. Cir. 2002) (emphasis original, citation omitted). The duty of mitigation reflects the policy of encouraging an injured party to attempt to avoid loss when it can do so without undue risk or burden. In this way, the amount of damages that the injured party could have avoided by taking reasonable steps to reduce its damages are subtracted from the amount that would otherwise have been recoverable as damages. See Restatement (Second) of Contracts § 350 cmt. b (1981); Dittmore-Freimuth Corp. v. United States, 390 F.2d 664, 679 (Ct. Cl. 1968).

Nevertheless, although costs incurred in the exercise of the duty of mitigation may possibly be recoverable in a breach of contract action, costs preceding the date of a breach are not recoverable. Indeed, TVA could not circumvent the bar to recovery of its pre-breach damages by formulating them as costs reasonably incurred in the exercise of its duty of mitigation. Costs incurred prior to an actual breach are not incurred solely as a consequence of the breach. At best, such "mitigation" costs might be incurred in anticipation of the possibility that the other party might breach the contract. Given that TVA cannot rely upon an anticipatory repudiation as a basis for supporting any pre-breach damages for a partial breach, it cannot circumvent that rule by arguing that it is entitled to rely on pre-breach "repudiations" to incur pre-breach costs.

In Middleton v. United States, 175 Ct. Cl. 786 (1966), the Court of Claims rejected the argument that a non-breaching party can recover the costs of "mitigation" efforts that occurred prior to the breach:

> [N]either of the parties here may insist upon an expansion of this concept so as to encompass items which relate to a period *antedating* defendant's breach. Both the defendant's right to a setoff and the plaintiff's duty to mitigate are defined in terms of the same fixed time period; like opposites of the same coin, they are

> inextricably bound together. Thus, plaintiff could no more seek to reduce defendant's setoff by alleging expenses incurred prior to his discharge, than defendant could enlarge his setoff by seeking the inclusion of income which plaintiff earned prior to his erroneous dismissal. . . . It follows, therefore, that all expenses which arose prior to plaintiff's discharge that he seeks to include, may not be considered within the framework of the setoff question.

Id. at 792 (italics in original; underlining added).[2] To the extent that TVA claims that costs incurred prior to DOE's partial breach are recoverable under principles of mitigation, TVA's arguments would be meritless and cannot resurrect a claim for pre-breach damages. Accordingly, the Court should reconsider its discussion regarding the recoverability of damages incurred as mitigation efforts prior to any partial breach of contract and, further, should bar TVA from introducing any evidence at trial regarding costs that it incurred or committed itself to incur prior to DOE's actual partial breach.

In support of its implicit determination that TVA could recover pre-breach mitigation costs, this Court cites to comment b of section 350 of the Restatement (Second) of Contracts. However, the cited sentence, read in context of the rest of comment b, does not support recovery of pre-breach "mitigation" damages in a partial breach case. The Restatement comment refers to four illustrations to explain the context of the comment's position that, "[o]nce a party has reason to know that performance by the other party will not be forthcoming, . . . he is expected to take

---

[2] In Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 665 (2004), appeal pending, No. 04-5122 (Fed. Cir. docketed July 26, 2004), this Court found that "[a] review of *Middleton* suggests that the court's rulings disallowing the costs of pre-breach mitigation may not be dicta, but the court did not necessarily establish 'an inflexible rule' based on the unusual facts of that case." Id. at 651. With all due respect, we believe that the Court of Claims' ruling, which constitutes binding precedent upon this Court, conclusively establishes that pre-breach mitigation costs are not recoverable. In any event, we have found no published authority for the position that a contractor can recover pre-breach mitigation costs in a partial breach case.

such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." In each of those illustrations, the non-breaching party was required to attempt to mitigate after the breach had occurred and after he subsequently learned of that breach. In the first two Restatement illustrations, one of the parties had repudiated the contract before the costs for which reimbursement was requested were incurred. As previously discussed, anticipatory repudiation constitutes a total breach of contract that, in and of itself, concludes the parties' continuing performance obligations. Restatement (Second) of Contracts § 253(1) cmt. a. However, because no doctrine of anticipatory partial repudiation exists, no "breach" occurred in this case prior to the actual partial breach at issue here. In the other two illustrations in comment b to section 350 of the Restatement, the first party had already breached the contract before the non-breaching party learned of the breach, and the non-breaching party was then obligated to attempt to mitigate its costs in response to the breach. None of the illustrations relate to a mitigation requirement or entitlement prior to the breach.

The Court's suggestion that the breaching party can fault the non-breaching party for failing to mitigate before a breach occurs, or that the non-breaching party can charge the breaching party for "mitigation" or any other costs incurred before a breach by repudiation or non-performance, finds no support in the Restatement. We have not identified any case law in which a party, in response to a partial breach claim, was allowed to recover mitigation damages incurred before the actual breach.[3] Because contract damages generally accrue from the date of

---

[3/] In response to our demonstration regarding pre-breach costs in other spent nuclear fuel cases pending before this Court, other plaintiffs have asserted that the Court of Claims' decision in Chain Belt Co. v. United States, 127 Ct. Cl. 38, 115 F. Supp. 701 (1953), supports an award of pre-breach damages. However, the Chain Belt case involved a total, not a partial, breach of contract. See Chain Belt, 127 Ct. Cl. at 45, 115 F. Supp. at 706-07; see Indiana Michigan, 60

the breach, Lucente, 310 F.3d at 262, and not before, we respectfully request that the Court reconsider its decision regarding post-1995 mitigation costs and find that damages run only from the date of a partial breach.

IV. THE COURT SHOULD RECONSIDER ITS RULING, ISSUED PRIOR TO DISCOVERY UPON CAUSATION ISSUES, THAT TVA'S CONSTRUCTION OF DRY STORAGE FACILITIES WAS CAUSED BY DOE'S PARTIAL BREACH

In its June 2, 2004 decision, the Court stated that "TVA's construction of dry storage facilities for spent nuclear fuel at its Brown Ferry and Sequoyah nuclear plan[t]s must be viewed as an affirmative step toward mitigation to avoid loss for the government's partial, ongoing breach." Opinion, at 13 (June 2, 2004). Because the parties have not yet briefed causation issues surrounding TVA's damages claim, and because the Government has not yet had an opportunity

---

Fed. Cl. at 649 ("*Chain Belt* was a total breach claim . . . "). As a result, the Chain Belt case does not support the existence of anticipatory repudiation or pre-breach "mitigation" in a partial breach case. Second, the Chain Belt decision does not support an award of pre-breach mitigation damages, given that it awarded mitigation costs only after an anticipatory repudiation of the contract at issue. While the Court of Claims never used the term "repudiation" in its order, it found, as a matter of fact, that, when the plaintiff began the removal of the Government's machinery in November 1946, the Government was physically unable to remove the equipment by December 10, 1946, a process that would take the "better part of . . . 90 days" to complete. Chain Belt, 127 Ct. Cl. at 43, 115 F. Supp. at 705; see id. at 56, 115 F. Supp. at 713 ("By November 1946, it was apparent that under no circumstances could defendant move out all its machinery by December 10, as provided in the contract."). The Court also determined that, "[w]hile there was not specific permission granted by defendant to plaintiff to do this work, defendant knew that it was being done and did not object." Id. at 57, 115 F. Supp. at 713. As a result, the contract was necessarily repudiated when the plaintiff commenced mitigation efforts. But see Indiana Michigan, 60 Fed. Cl. at 649 (recognizing that *Chain Belt* "may have involved repudiation" (emphasis added)). In any event, even if the Chain Belt decision could stand for the proposition that a plaintiff could potentially recover pre-breach mitigation costs, the pre-breach costs in that case were so closely tied in time to the actual breach (incurred one month prior to performance due date), and were so minor in nature, that it is not comparable to potentially significant claimed costs incurred between 1995 and the date of the partial breach.

to conduct discovery to allow it to investigate factual issues surrounding causation, we respectfully request that the Court reconsider this causation finding.

TVA has the burden of establishing that the breach in question directly and proximately "caused" the damages that TVA seeks to recover. See Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 743 n.3 (1980) (damages are recoverable if "they are directly and proximately caused by the contract breach"); Fawick Corp. v. United States, 149 Ct. Cl. 623, 637 (1960) ("the cause must produce the effect inevitably and naturally, not possibly nor even probably") (quoting Myerle v. United States, 33 Ct. Cl. 1, 27 (1897)); Spartan Aircraft Co. v. United States, 120 Ct. Cl. 327, 100 F. Supp. 171, 173 (1951) (burden on plaintiff to prove that breach "caused" damage). That is, "[t]he party complaining must show, not only that he has suffered the loss, but also that it would not have been incurred, but for the wrongful act of his adversary." Fawick, 149 Ct. Cl. at 637 (1960) (quoting Osage Oil & Refining Co. v. Chandler, 287 F. 848, 852 (2d Cir. 1923)).

It is possible that, through discovery, we will determine that, in fact, the Government's delay in beginning SNF acceptance did not "cause" TVA to construct the dry storage facilities at issue. We have discovered in other SNF cases that nuclear utility companies sometimes build dry storage facilities for business reasons other than the Government's delay in beginning SNF acceptance. Further, because some nuclear utilities would have or will run out of space in their wet storage pools regardless of any DOE delay in beginning SNF acceptance, those nuclear utilities would have had, or quite possibly might in the future have, a need to build dry storage facilities to allow them to continue to operate without reference to DOE's delay. The Government should be provided an opportunity to investigate whether TVA's dry storage

construction was the result of DOE's delay in beginning SNF acceptance and whether TVA would have constructed dry storage facilities regardless of that delay. Although we are not pre-judging the result of our discovery, we respectfully request an opportunity to engage in that investigation before the Court decides this causation issue.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant this motion for reconsideration.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Facsimile: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

SONIA M. ORFIELD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

August 10, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 10th day of August 2004, a copy of foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 2, 2004 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.