IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TENNESSEE VALLEY AUTHORITY,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | ) | No. 01-249 C<br>(Judge Lettow) |

DEFENDANT'S MOTION FOR AN ENLARGEMENT OF TIME FOR THE SUBMISSION OF EXPERT REPORTS BY DEFENDANT

Pursuant to Rule 6(b) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully requests a six-week enlargement of time for the submission of its expert reports. The Government's expert reports are currently due on February 15, 2005. The extension would bring the date for submission of the reports to March 29, 2005. This is defendant's first request for an enlargement of time for this purpose. In conjunction with this enlargement, the Government also asks that the Court consider enlarging all of the dates in its July 8, 2004 scheduling order by six weeks so that none of the remaining time periods will be unduly compressed as a result of the Government's enlargement of time. In addition, the Government seeks an order directing plaintiff, Tennessee Valley Authority ("TVA"), to complete its production of documents no later than January 31, 2005. Counsel for TVA has advised that it does not oppose an enlargement of time of three weeks for the submission of the Government's expert reports, but it opposes a six-week enlargement of time, either for the submission of the Government's expert reports, or for the schedule as a whole.

In support of this motion, defendant states as follows. Defendant served requests for production of documents on TVA on September 13, 2004 and November 29, 2004. While TVA has produced approximately 32,000 pages of documents in response to those requests, it has not produced anywhere near all of the responsive documents that it intends to produce. Rather, it anticipates that it has more than twice that number remaining -- approximately 75,000 pages of documents. Most of the documents relating to Browns Ferry Nuclear Plant and many documents relating to Sequoyah Nuclear Plant have yet to be produced.

TVA recently advised the Government that it would substantially complete its production of accounting documents relating to the Sequoyah Nuclear Plant by Friday, January 14, 2005; that it will substantially complete its production of accounting documents related to Browns Ferry Nuclear Plant and will complete its production of documents related to "reracking" or using "baby racks" in the spent fuel pools at that plant by Friday January 21, 2005; and that it will complete all remaining production by the end of January.

In accordance with its intended schedule, TVA has produced six-and-a-half boxes of documents in the last week. While the Government has not yet completed its review of these documents, it has some concern that this production and TVA's upcoming productions may not be as complete as TVA believes them to be. The Government has found what appear to be disparities between what TVA has previously indicated that it has produced and what the Government's accountants have determined through their review. See Letter from Crawford to Shea of 1/18/05 (attached hereto as Exhibit 1). For this reason, and because the maintenance of TVA's intended schedule is critical to the Government's proposed schedule, the Government asks that the Court order TVA to produce all documents responsive to the Government's two requests

no later than January 31, 2005.

Because of the anticipated volume of TVA's production, and TVA's schedule for that production, the Government will require additional time to file its expert reports. For the Government attorneys and experts to all have access to TVA's documents, the Government will either have to scan and code these documents for electronic access or make multiple paper copies of the 75,000 pages. It generally takes the Government's administrative support at least three weeks to scan and code a small production for electronic access. However, the Government anticipates that it will take longer to scan and code a production of 75,000 pages, not only due to the volume, but also because of pressing administrative constraints. Once these documents are copied or processed and available to the attorneys and experts, the Government and its experts will require sufficient time to review this extensive production. After these documents are reviewed, the Government will need to take certain depositions that it has delayed because it has not had sufficient documents to take the depositions. In addition, the Government may potentially need to notice additional depositions the need for which it is not currently aware to gain an understanding of certain documents from the new production. The Government's experts will then require time to review this deposition testimony prior to filing their expert reports.

For the foregoing reasons, defendant respectfully requests that the Court grant an enlargement of time for defendant to submit its expert reports up to and including March 29, 2005, correspondingly enlarge all of the dates in its July 8, 2004 scheduling order by six weeks, and order plaintiff, TVA, to complete its production of documents no later that January 31, 2005.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Sonia M. Orfield
SONIA M. ORFIELD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0534
Fax: (202) 307-2503

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SHARON A. SNYDER
KEVIN CRAWFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

January 19, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that, on this 19th day of January 2005, a copy of the foregoing "Defendant's Motion for an Enlargement of Time for the Submission of Expert Reports by Defendant" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sonia M. Orfield

**U.S. Department of Justice**

Civil Division

*Washington, D.C. 20530*

PDK:DMC:HDL:KBCrawford
D.J. No. 154-01-249

Telephone:
(202) 305-9640

January 18, 2005

***By Fax: 865-632-6718***
Peter K. Shea
Senior Attorney
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401

Re: Tennessee Valley Authority v. United States, No.01-249C

Dear Mr. Shea:

This letter serves as an update on the status of the production of documents by TVA in response to the requests made upon behalf of the Government's auditors.

In our telephone conference on Friday, January 7, 2005, we discussed the requests contained in my letter dated January 3, 2005. At that time, you represented that you believed that TVA had already produced the invoices, contracts, and purchase orders for the following contractors or vendors in the auditor's "First Priority" grouping relating to the Sequoyah Nuclear Plant ("SQNP"):

- Holtec International
- Schaerer Contracting Company
- Ferg & Associates
- Garner Contracting
- Stein Construction Company
- Triviz Incorporated
- Energy Northwest
- Nichols Concrete Equipment Company

With respect to those SQNP contractors or vendors, my auditors have confirmed to me that, prior to the documents received during the week of January 10 - 14, 2005, the following was the status of the production:

Holtec - We had been provided with a copy of Contract No. 99999906 and 28 supplements.

We believe that this is the entire contract. The auditors had tied out invoices for $9,309,850 of the $9,446,377 reflected to have been paid to Holtec in the SQNP claim. An amount of $136,527 was unsupported by invoices. We believe that the missing invoice numbers are 991006 and 21230.

Schaerer - We had been provided with a copy of the contract awarded and three supplements. We believe that this is the entire contract. The auditors had tied out invoices for the entire $351,611 in costs reflected to have been paid to Schaerer in the SQNP claim.

Ferg - We had been provided with copies of the original contract and supplements 2-8 to the contract, but had not been provided with a copy of supplement 1 to the contract. The auditors had tied out invoices for $321,410 of the $329,557 reflected to have been paid to Ferg in the SQNP claim. An amount of $8,146 was unsupported by invoices. We believe that the missing invoice numbers are 2003-43 and 2002-44.

Garner - Although the auditors had tied out invoices for the entire $120,781 in costs reflected to have been paid to Garner in the SQNP claim, we had not been provided with copies of the Garner contracts or purchase orders.

Stein - Although the auditors had tied out invoices for the entire $286,033 in costs reflected to have been paid to Stein in the SQNP claim, we had not been provided with copies of the Stein contracts or purchase orders.

Triviz - We had been provided with a copy of the contract awarded and 4 supplements. We believe that this is the entire contract. The auditors had tied out invoices for the entire $225,393 in costs reflected to have been paid to Triviz in the SQNP claim.

Energy Northwest - Although the auditors had tied out invoices for the entire $55,985 in costs reflected to have been paid to Energy Northwest in the SQNP claim, we had not been provided with copies of the Energy Northwest contracts or purchase orders.

Nichols Concrete - Although the auditors had tied out invoices for $14,453 of the $16,435 reflected to have been paid to Nichols Concrete in the SQNP claim, we had not been provided with copies of the Nichols Concrete contracts or purchase orders. An amount of $1,982 was unsupported by invoices. We believe that this amount relates to one missing invoice numbered 57668.

Summary: As of January 7, 2005, we had not been provided with all of the contract documents or purchase orders for Ferg, Garner, Stein, Energy Northwest and Nichols Concrete. Additionally, as of that date, we were still lacking some of the invoices relating to Holtec, Ferg, and Nichols Concrete.

During our telephone conference on Friday, January 7, 2005, you indicated that the contractors and vendors discussed above represented a majority of the SQNP claimed costs, and that the other contractors and vendors in in the auditor's "First Priority" grouping and those in the

"Second Priority" grouping represented only a de minimis portion of the SQNP claimed costs. With respect to that claim, the auditors have informed me that those other contractors and vendors represent $5,651,746, or over one-third, of the $16,337,263 in total SQNP claimed costs. Therefore, it can only benefit TVA to comply with the auditor's request for support for the costs relating to the other contractors and vendors.

In that regard, during our telephone conference on Friday, January 7, 2005, you acknowledged that invoices, contracts, and purchase orders had not yet been provided for the following contractors or vendors in the auditor's "First Priority" grouping relating to SQNP:

- Stone & Webster (including all CWA's)
- Vulcan Materials
- Consolidated Power Supply
- Robert J. Mullin
- Pinkerton Government Services
- Qore Property Sciences
- Westinghouse Electric Company
- Mactec
- Electrical Supply Alliance
- EH Wachs Company
- Duratek
- True Line Cutting & Coring

However, you represented that you believed that TVA would be producing many of these documents by January 13, 2005. Additionally, with respect to the contract documents relating to Vulcan, Consolidated Power, and Mactec, you informed us that you believed that those documents consisted only of purchase orders.

We acknowledge receipt of TVA's production dated January 13, 2005 (Nos. TVA 05-0001 - 05-000790), that also contained a copy of the Robert J. Mullin contract (Nos. TVA 04-29737 - 04-29770). As you represented in our telephone conference on Friday, January 7, 2005, that production contained copies of the applicable "agency-wide" contracts relating to the following contractors or vendors:

- Stone & Webster (including all CWA's)
- Pinkerton Government Services
- Retiree Resources Corporation (the successor to BVI)

Although this may satisfy some of the auditor's requests for the contract documents relating to those contractors or vendors for both SQNP and the Brown's Ferry Nuclear Plant ("BFNP"), it does not satisfy their pending requests for the SQNP and BFNP invoices relating to those same entities.

In addition to those items, the January 13, 2005 production contained a Westinghouse

proposal and CWAs, $16,134.39 in Duratek invoices, two Holtec invoices relating to Administrative Fees Contract No. 00021715 for both SQNP and BFNP, a Work Breakdown Structure schedule (Rev. 10, 12/12/03), and several CWA Requests. The Westinghouse proposal and CWAs seem to cover the entire total SQNP costs of $94,100. However, the other documents do not complete any of the other pending SQNP audit requests.

The remaining documents contained in the January 13, 2005 production are responsive only to the auditor's requests relating to BFNP. Those documents include invoices, contracts, and purchase orders for the following contractors or vendors in the auditor's "First Priority" grouping relating to BFNP:

- Holtec International
- Garner Contracting
- Qore Property Sciences
- Nichols Concrete Equipment Co.

The auditors are currently evaluating the responsiveness of these materials, and we will update the status of the pending BFNP audit requests when that review has been completed. Nevertheless, in our telephone conference on Friday, January 7, 2005, you represented that TVA would complete production of the requested contractor and vendor materials relating to BFNP by no later than January 21, 2005.

In our telephone conference on Friday, January 7, 2005, we also discussed scheduling the necessary telephone conferences to clear up some of the pending audit requests relating to overhead costs, internal chargebacks, the IBS accounting system, and other labor cost issues. I suggest that we try to accomplish this scheduling during the limited time available this week.

Finally, I had the auditors prepare a more detailed description of the documents requested in their pending audit requests. That description is contained on the enclosed list of "TVA Documents Outstanding." That list is not meant to add new requests to the pending ones, but, rather, to provide a more detailed description to the pending requests in the hope that it will facilitate a quicker response by TVA. Specifically, the auditors have provided a specific description of the items that they feel can be produced electronically to obviate the need for producing paper copies. We have discussed this previously, and this was successfully done when TVA produced the transaction detail for SQNP electronically. Therefore, this should be done with all of the requested records that TVA already has in electronic form. (It is believed that all of the documents that the auditors have requested to be produced in electronic form are already maintained by TVA in that manner.)

Because it is possible that we may have overlooked something in summarizing the results of our review of the documents produced so far, please feel free to let me know if you feel that any of the status descriptions set forth above are inaccurate. However, also please contact me at your earliest convenience so that we can discuss scheduling the telephone conferences described above

and when you expect to provide the remaining documents responsive to the pending SQNP audit requests.

Sincerely,

Kevin B. Crawford
Trial Attorney
Commercial Litigation Branch

# TVA DOCUMENTS OUTSTANDING

A. Documents in Support of Claim:

1. IBS transaction detail report printouts from accounting system for Sequoyah (Years: 1998, 2002, 2004) and Browns Ferry (Years: 2003 and 2004)

2. Electronic file containing transaction detail for Browns Ferry for the years 1998-2004 in tabular form contained in either Microsoft Excel or Access.

3. Electronic files for the all exhibits provided as support for the September 2002 Report of Costs, including, but not limited to, filenames:

    a. Exhibit 7: "Work Breakdown Structure\Dry Cask WBS Rev 6.xls"

    b. Exhibit 8: "Project Status Reports\PCN 3143\Holtec Invoice Log"

    c. Exhibit 9, 10, 11, 12: "SNPSPNT Financial Report Rev. 2 thru Mar 10, 2002.xls"

    d. Exhibit 17: "WBS.xls"

    e. Exhibit 18: "Invoice Ledger.xls"

    f. Exhibit 19, 20, 21: "BFN Project 2315 Financial Report.xls"

4. Electronic files for the all exhibits provided as support for the July 2003 Report of Costs, including, but not limited to, filenames:

    a. Exhibit 6: "Daily CWA Mhr Summary.xls" and "Work Breakdown Structure\Dry Cask WBS Rev 9.xls"

    b. Exhibit 7: "SNPSPNT Financial Report Rev.7 thru Sep 29 2002PKSPRINT.xls"

    c. Exhibit 8: "Project Status Reports\PCN 3143\Holtec Invoice Log.xls"

    d. Exhibit 11: "WBS.xls"

    e. Exhibit 12: "FY02 BFN Project 2315 Financial Report.xls"

    f. Exhibit 12: worksheet titled "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY99 Recoverable Costs"

    g. Exhibit 12: worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY00 Recoverable Costs" and the following worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY00 Split Costs"

h. Exhibit 12: worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY01 Recoverable Costs" and the following worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY01 Split Costs"

i. Exhibit 12: worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY02 Recoverable Costs" and the following worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY02 Split Costs"

j. Exhibit 13: "FY02 Invoice Ledger.xls"

5. Electronic files for the all exhibits provided as support for the June 2004 Report of Costs, including, but not limited to, filenames:

   a. Exhibit 3, 4: "SNPSPNT Financial Report Rev. 0 thru Sep 28 2003.xls"

   b. Exhibit 4: the beginning of the filepath is illegible, but the file ends in: "... Financial Records\FY03 Submittal Files\FY03 IBS Transaction Adjustments.xls" making sure to include all supporting worksheets.

   c. Exhibit 5: "Project Status Reports\PCN 3143 \SQN Holtec Invoice Log.xls"

   d. Exhibit 11, 12: "FY03 BFN Project 2315 Financial Report.xls"

   e. Exhibit 12: worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY03 Recoverable Costs" and the following worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY03 Split Costs"

   f. Exhibit 13: "Invoice Ledger thru FY03.xls"

6. Electronic files for the all exhibits provided as support for the November 2004 Report of Costs, including, but not limited to, filenames:

   a. Exhibit 1: "SNPSPNT Financial Report Rev. 0 thru Sep 26 2004pks.xls"

   b. Exhibit 2: "Project Status Reports\PCN 3143\OGC Financial Reports\FY03 Submittal Files\FY04 IBS Transaction Adjustments.xls" making sure to include all supporting worksheets.

   c. Exhibit 3: "Project Status Reports\PCN 3143\Holtec Invoice Log.xls"

   d. Exhibit 4: "FY04 BFN Project 2315 Financial Report.xls"

   e. Exhibit 5: worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY04 Recoverable Costs" and the following worksheet titled, "Browns Ferry Nuclear Plant Spent Fuel Management Project – FY04 Split Costs"

   f. Exhibit 6: "FY04 Holtec Invoice Ledger.xls"

B. Labor Documents:

1. Provide electronic payroll distributions, payroll registers, certified payrolls, timecards, and other records to support any internal labor items for personnel included in any "Work Doc" or "Cost Center" to which costs were recorded for the period 1997-2005 for Sequoyah and Browns Ferry and included in the Reports of Costs. Information should contain all time for this personnel, not just claimed time. Where available, such data should preferably be provided in electronic format such as Microsoft Access, Microsoft Excel, or as a text file delimited with the "~" character. The documents should include, but not limited to, the following information:

    a. Date worked;
    b. Employee Name;
    c. Employee Number;
    d. Position Title;
    e. Cost Center;
    f. Work Doc;
    g. Pay type (Salary vs. Hourly);
    h. Base Wage Rates;

2. Reports showing how fringe benefit costs are determined and allocated to contracts including components of fringe benefit pools and methods of distribution;

3. Provide detail descriptions of Labor Cost Center abbreviations, including, but not limited to:

    a. "ASP"
    b. "ATL"

4. Provide labor agreements between TVA and its personnel.

C. Outside Vendor Costs

1. Provide TVA request for proposals, vendor bids, invoices, contracts, change orders, purchase orders, payment applications or other source documents for any purchased materials, outside labor, or other third party costs included in any "Work Doc" or "Cost Center" contained in the various Reports of Costs for Sequoyah and should include the following vendors:

    a. Stone & Webster Construction Company
    b. Vulcan Materials Company
    c. Consolidated Power Supply
    d. Pinkerton Government Services
    e. Westinghouse Electric Company
    f. Mactec
    g. Qore Property Sciences
    h. Robert J Mullin
    i. True Line Cutting & Coring
    j. Midpoint International
    k. Electrical Supply Alliance
    l. EH Wachs
    m. Duratek
    n. BVI

o. American Technologies
p. Adecco
q. Law Engineering
r. Nuclear Energy Institute
s. Holtec International Invoices:
   (i) 991006
   (ii) 21230
t. Ferg & Associates Invoices:
   (i) 2003-43
   (ii) 2002-44
u. Nichols Concrete Equipment Invoices:
   (i) 57668

2. Provide TVA request for proposals, vendor bids, invoices, contracts, change orders, purchase orders, payment applications or other source documents for any purchased materials, outside labor, or other third party costs included in any "Work Doc" or "Cost Center" contained in the various Reports of Costs for Browns Ferry and should include the following vendors:

   a. Holtec International
   b. Stone & Webster Construction Company
   c. Ferg & Associates Invoices
   d. Garner Contracting
   e. Robert J Mullin
   f. Retiree Resources Co. (RRC)
   g. Qore Property Sciences
   h. Energy Northwest
   i. Nichols Concrete Equipment
   j. Jeff Bellew Transport
   k. BVI
   l. Mid South Testing
   m. International Civil Engineering
   n. Adecco
   o. Nuclear Energy Institute
   p. Global Spent Fuel Management
   q. Allegra Print and Imaging

3. Include all documents detailing the "TVA Materials" included as Procurement costs for 2003 and 2004 for Browns Ferry.

4. Provide cancelled checks, wire transfers records, and bank reconciliations as needed to support payment for all third party costs from 1998-2004.

D. Internal TVA Chargebacks

1. All documentation of intercompany or intracompany charges and credits to both the Sequoyah and Browns Ferry spent fuel projects.

a. Provide general procedures, detail reports or invoices and other documents relating to the accounting of internal TVA chargebacks.

2. Provide a detail list of TVA owned equipment including equipment ID numbers, equipment descriptions, equipment names, purchase price, purchase date, operating costs, ownership costs, etc.

3. Provide a detail list of all payroll information for the TVA personnel in the "Nuclear Design Internal Services" department who have costs included as internal chargebacks in the various Reports of Costs.

4. Provide documentation and detail of personnel hired or equipment purchased solely for the performance of the spent fuel projects at both Sequoyah and Browns Ferry.

E. Overhead

1. Descriptions of the composition of indirect cost pools and related bases of distribution, for jobsite or general conditions, branches, divisions, and the home office including, but not limited to:

   a. Cost Center 27d: Core Team Overhead;
   b. Cost Center 82z: Project Support;
   c. Cost Center 84z: Cap Support Exp Distr.

2. Reports showing costs, by account, accumulated in indirect cost pools (Jobsite, branch, division, home office, G&A, etc.) and distribution of these costs to cost objectives (i.e., contracts). Often referred to as overhead distribution summaries and reports.

3. Payment requests, invoices, payment vouchers and cancelled checks for all non-payroll indirect cost transactions.

4. Reports showing how fringe benefits costs included in the cost pools are determined.

5. Personnel files for all indirect personnel included in the cost pools.

6. All documents relating to the calculation, monitoring, allocation and regulation of "Allowance for Funds Used During Construction" or AFUDC.

F. Travel

1. Provide all expense reports, receipts, reason for travel and reimbursement authorization for all travel costs included in the various Reports of Costs.