IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TENNESSEE VALLEY AUTHORITY<br>Plaintiff<br><br>v.<br><br>UNITED STATES<br>Defendant | No. 01-249-C<br>(Judge Lettow) |

**TVA'S OPPOSITION TO DEFENDANT'S MOTION FOR AN ENLARGEMENT OF TIME FOR THE SUBMISSION OF EXPERT REPORTS**

**STATEMENT**

In response to Defendant's document requests, from mid-October 2004 and continuing through January 25, 2005, TVA has provided more than 75,000 pages of numbered documents from corporate offices and nuclear plant sites in five different cities, as well as several compact discs filled with responsive materials. Currently, TVA anticipates that it will have to produce up to an additional 12 boxes of documents to satisfy the Defendant's requests. Approximately half of these additional materials should be shipped by February 4 and the remainder by February 11.[1] TVA's production then will be complete for all practical purposes.

Based on these circumstances, Defendant's motion for an enlargement of time should be denied. First, the time constraints facing Defendant are, in large part, attributable to Defendant's decision to delay the initiation of discovery and then to issue extraordinarily broad discovery requests. Second, the vast bulk of the materials upon

---

**1** TVA offered to ship all these additional materials to Defendant by February 4, but Defendant declined as the shipment would have involved providing documents without Bates numbers. Instead, TVA agreed to ship materials as each box of copying was numbered and to expedite the mode of shipment.

which expert reports might be based has been or soon will be produced as noted above. Third, TVA has gone to great length to accommodate the Government with regard to the financial records the Government seeks (by permitting informal discovery through telephone conversations with a TVA project accountant, for example, and agreeing to further, similarly informal discovery) while the Government has taken its document requests to lengths far beyond those required for a reasonable audit. Fourth, were the Court unable to accommodate a six-week extension to the trial date, trial could be delayed for many months; and TVA would suffer further financial harm because of the apparent lack of prejudgment interest for TVA's $35 million claim. Fifth, TVA is producing voluminous amounts of documents only because Defendant has remained adamant about its need for every copy of every possibly relevant document; the enormous number of duplicative materials increases the page count tremendously, but such duplicative materials require no study or analysis.

Should the Court nevertheless determine that Defendant be granted more than an additional three weeks within which to submit its expert reports, TVA requests that the Court further alter the pretrial schedule to provide TVA time within which to review those reports and take discovery of the experts. Under Defendant's proposal, Defendant would have until March 29, 2005, to submit its reports, leaving TVA only two weeks within which to analyze the reports and depose the Government's experts. Accordingly, TVA requests that the Court maintain the current trial schedule by extending the time within which TVA may take expert discovery by two weeks, until April 29, 2005, and by extending the time within which TVA is to submit its

memorandum of facts and law and any supplemental exhibit or witness lists to May 27, 2005.

**ARGUMENT**

As Defendant's motion indicates (at 2), Defendant waited until September 13, 2004, to initiate discovery and then until November 29 (immediately prior to the holiday season) to serve its 101 major requests for document production (TVA continues to receive document requests from Defendant — the most recent arrived last week, for example — and to respond to interrogatories). In light of Defendant's assertion that it requires six weeks to process and review documents, Defendant's decision to wait until November 29 to submit a major document request ensured Defendant's inability to meet its trial schedule obligations. This is so because, with a six-week processing requirement, Defendant needed all the requested documents by January 2, 2005 (essentially within 30 days of service of the requests) to meet the February 15, 2005 deadline set by the Court. Even leaving aside the holiday period involved, it is extremely unlikely that a major document production on the scale requested by Defendant would be completed within 30 days or indeed that Defendant itself ever has met such a schedule.

Regardless of the timeliness of Defendant's requests, primarily two categories of documents are being produced: documents that relate to "but for" causation (i.e., whether TVA would have had to build dry storage facilities had Defendant not breached the contract) and documents that relate to the amount of TVA's claims (i.e., the backup for the costs incurred for the construction of the dry storage facilities at TVA's Sequoyah and Browns Ferry Nuclear Plants). As to "but for" causation, TVA thinks it has provided all the information necessary for Defendant to analyze fully all aspects of

TVA's spent nuclear fuel storage program.[2] Indeed, long before damages discovery began, Defendant was privy to substantial technical information because TVA already had provided Defendant with electronic copies of TVA's spent nuclear fuel database and other documents (as detailed in TVA's March 12, 2003 submission to the Court in response to Defendant's status report). Similarly, TVA has routinely provided Form RW-859 to the Department of Energy, and this document, too, sets out encyclopedic information about the status of fuel assemblies at TVA reactors. Finally, of course, TVA has fully complied with the extensive document submittal requirements of the Nuclear Regulatory Commission.

As to the financial materials documenting costs incurred by TVA as a result of the Department of Energy's breach of contract, as early as September 9, 2002, TVA wrote to counsel for Defendant to submit TVA's first claim (complete with examples of financial and personnel tracking reports being used and summary-level support for the claim) covering the period through fiscal year 2001. At the time, TVA offered to permit an audit of its claims and, alternatively, offered Defendant the opportunity to comment upon how TVA's claim was structured and make suggestions regarding future submittals. Defendant chose not to take any action. Between its first claim submittal and the final fiscal year 2004 submittal, TVA also provided Defendant

---

2 In addition to numerous documents already in the Government's possession, Defendant's initial document request was replete with requests that, absent objection from TVA, would have called for tractor-trailer loads of documents with little or no relevance to this lawsuit such as requests for "[a]ll documents related to the restart of Browns Ferry Unit 1, including, but not limited to, documents related to the work required for restart and the schedules to achieve restart (including historical schedule not used)" (Req. No. 39) and all meeting notes from TVA's Board of Directors' meetings from 1970 to the present.

with two other damages reports covering, respectively, the costs incurred by TVA in fiscal year 2002 and fiscal year 2003.

Defendant's November 29, 2004 second set of document requests generally sought materials related to damages claims and was as broad in scope as Defendant's first set of requests. Because an audit typically requires random testing of materials rather than calling for such an immense production, TVA requested Defendant set a threshold amount below which documentation need not be provided.[3] Defendant temporized, stating its auditors eventually would set such a level. Accordingly, TVA began gathering and producing financial backup for the most significant claims.

As shown by the January 18, 2005 letter attached to Defendant's motion, however, Defendant nevertheless continued to demand a full production. The extraordinary breadth and unnecessary reach of Defendant's requests are easily confirmed by reference to the January 18, 2005 letter which, among numerous other records, demands all payroll records for personnel on the dry storage project as well as personnel records for all indirect personnel and all cancelled checks, wire transfer records, and bank reconciliations for all third party costs (i.e., the bulk of the costs) from 1998-2004.

Moreover, the extensive five-page "TVA DOCUMENTS OUTSTANDING" list attached to the January 18, 2005 letter is misleading in several respects. For example, the first two of the five pages seek electronic copies of documents already produced in hard copy; and, in some instances, those copies have been available

---

[3] We note moreover, that as an Federal Executive Branch agency with its own external auditors and Inspector General, TVA accounting materials are unlikely to be false or fraudulent.

to the Defendant for several years. Moreover, many documents sought with regard to outside vendor costs also have been produced, including the bulk of materials related to the single largest expense for both the Browns Ferry and Sequoyah projects, the Holtec contract.[4]

Ultimately, in view of TVA's already extensive production, TVA thinks a reasonable audit already could have been accomplished had Defendant targeted random materials for checking rather than insisting upon full documentation for items ranging down to $12 travel expense claims.[5] To the extent that Defendant has chosen to do so after declining to accept TVA's 2002 offer of a voluntary audit, after choosing not to provide any guidance to TVA regarding claim format and backup materials, and after delaying the onset of the bulk of financial discovery until the holiday season, Defendant should bear the burden of the inherent delay associated with a voluminous document production.

---

4 Defendant's January 18 letter acknowledges (at 1) that it does not take into account materials received during the week of January 10-14, 2005.

5 Last week, after TVA learned that Defendant apparently had agreed to a $5,000 limitation in other pending spent nuclear fuel actions, TVA again sought such an agreement, and the Government indicated it would consider TVA's request but that consultation with auditors and economists was required first. During a January 31, 2005 telephone call, Defendant agreed to consider sampling some items such as travel expense reports and payments to vendors.

**CONCLUSION**

For the foregoing reasons, Defendant's motion should be denied or, in the alternative, the Court should adjust the pretrial schedule such that the trial date remains unaffected.

February 2, 2005

Respectfully submitted,

Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Facsimile 865-632-6718

Maureen H. Dunn
General Counsel

Edwin W. Small (TN BPR 012347)
Assistant General Counsel

s/ Peter K. Shea
Peter K. Shea (TN BPR 005573)
Senior Attorney
Telephone 865-632-7319

Attorneys for Tennessee Valley Authority

003729371

**CERTIFICATE OF FILING**

I certify that on February 2, 2005, a copy of the foregoing document, "TVA'S OPPOSITION TO DEFENDANT'S MOTION FOR AN ENLARGEMENT OF TIME FOR THE SUBMISSION OF EXPERT REPORTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Peter K. Shea
Attorney for Tennessee Valley Authority