IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TENNESSEE VALLEY AUTHORITY, Plaintiff, | ) | |
| v. | ) | No. 01-249 C (Judge Lettow) |
| UNITED STATES, Defendant. | ) | |

DEFENDANT'S MOTION *IN LIMINE*
TO EXCLUDE TESTIMONY FROM UNDISCLOSED WITNESSES
AND MOTION FOR EXPEDITED CONSIDERATION

Defendant, the United States, respectfully files this motion *in limine* to exclude any offer of testimony at trial from witnesses that plaintiff, Tennessee Valley Authority ("TVA") identified for the first time in its trial witness list on May 6, 2005. In alternative, we request that the Court permit us to depose these witnesses, and that those depositions take place in Washington, D.C.

Because there is little time remaining prior to trial, defendant respectfully requests expedited consideration of this motion.

ARGUMENT

I. TVA FAILED TO DISCLOSE ALMOST HALF OF ITS PROPOSED WITNESSES DURING DISCOVERY

On May 6, 2005, TVA served the Government with a witness list identifying a total of 17 present or former TVA employees that it either intends to or may call as witnesses at trial. (Ten of these persons were listed as witnesses on TVA's "will call" list, and the remaining seven were listed as "may call" witnesses.)[1] A 5-9.[2] Almost half of these proposed witnesses – six of TVA's

[1] On May 11, 2005, the Government received an e-mail from TVA's counsel indicating that its "will call" and "may call" designations may be changing from those on its May 6, 2005

ten "will call" witnesses and two of TVA's seven "may call" witnesses – have not previously been disclosed as persons with knowledge about any specific topic or issue. Those eight witnesses are Mark J. Burzynski, C. Gayle Creamer, Roy J. Galyon, Andrew W. Holmes, T. A. Keys and Michael L. Turnbow on the "will call" list, and George M. Holton, Jr. and J. David Humphrey on the "may call" list.

Five of the remaining nine proposed witnesses – R. Alan Chapman, Charles R. Davis, Thomas L. Hayslett, Jr. and Paul J. Walker on the "will call" list, and Donald L. Hutson on the "may call" list – were identified by TVA in its July 8, 2004 RCFC 26(a)(1) initial disclosures. A 1-3. Two of the other four – Phillip D. Brown and George M. Laurie on TVA's "may call" list – were identified by TVA as having knowledge regarding various issues during the discovery process. The final two – Jack A. Bailey and John L. Symonds on TVA's "may call" list – were initially identified only based upon the Government's review of TVA's protracted document production. All of these nine proposed witnesses were deposed by the Government during discovery.[3]

One of TVA's eight previously undisclosed witnesses, Mark J. Burzynski, was identified as a person who provided information to assist TVA's counsel in providing answers to the

---

witness list. For ease of reference, any such designation referred to in this motion will refer to the designations contained on TVA's May 6, 2005 witness list.

[2] "A _____" refers to the appendix to this motion.

[3] Additionally, the Government also deposed four other TVA employees – Donald Green, Everett Whitaker, John Carden and Kenneth Spates – during discovery. Of those, only Mr. Carden was identified by TVA in its July 8, 2004 RCFC 26(a)(1) initial disclosures. A 3. The other three, again, were initially identified only based upon the Government's review of TVA's protracted document production. Two of those three – Mr. Green and Mr. Spates – are listed as "will call" witnesses on the Government's witness list. Defendant's May 6, 2005 Witness List at 2-3.

Government's first set of interrogatories. A 18. However, in those answers, he was identified only as a custodian of information relating to the current status of the operating licenses for TVA's nuclear plants. A 13-17. In contrast, in the witness list that TVA provided the Government on May 6, 2005, Mr. Burzynski has been identified as a witness that will testify about "TVA's organizational structure, accounting practices and budgeting, and TVA's practices regarding internal chargebacks and internal chargeback costs." A 5. Yet, during the Government's audit of TVA's claim, TVA never referred the Government's auditors or attorneys to Mr. Bursynski as a person who had any knowledge of TVA's "accounting practices and budgeting" or the "internal chargeback costs" contained in the claim.

Likewise, five other previously undisclosed witnesses have now been identified as persons who will or may testify about issues relating to the Government's audit of TVA's claimed costs and the testimony of the Government's accounting and damages expert, Stephen Kiraly.[4] A 6-8; Defendant's May 6, 2005 Witness List at 4. Again, none of these five witnesses were identified either during the audit or in discovery as being persons upon whom TVA would rely to testify about these subjects.

The last two of the eight previously undisclosed witnesses – T. A. Keys on the "will call" list, and George M. Holton, Jr. on the "may call" list – are both identified as persons who will or may testify about "TVA's storage capacity for spent nuclear fuel, TVA and DOE projections of SNF discharges, acceptance rates and acceptance rate impacts, and SNF management." A 7-8. These issues and, more specifically, the parties' contentions on DOE's rate of acceptance in the

---

[4] These five proposed witnesses on audit issues are C. Gayle Creamer, Roy J. Galyon, Andrew W. Holmes and Michael L. Turnbow on the "will call" list, and J. David Humphrey on the "may call" list. A 6-8.

hypothetical, "but for" world and the effect of that rate of acceptance on plaintiff's fuel storage needs are some of the most important issues in this case. The Government deposed eight of TVA's present and former corporate executives on this issue. However, TVA has listed only four of those deponents as witnesses. While the Government does not care upon whom TVA wishes to rely to provide testimony on these issues, if TVA had wanted Mr. Keys and Mr. Holton to serve as its witnesses, it should have disclosed them as knowledgeable individuals before now.

## II. TVA'S EIGHT PREVIOUSLY UNDISCLOSED WITNESSES SHOULD NOT BE ALLOWED TO TESTIFY

Because TVA failed to disclose the identity of these eight witnesses until it served its witness list, and TVA has identified no viable reason for this lack of prior disclosure, the Court should preclude the presentation of their testimony at trial. RCFC 37(c)(1) explicitly provides that "[a] party that without substantial justification fails to disclose information required by RCFC 26(a) or 26(e)(1). . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness. . . not so disclosed." RCFC 37(c)(1).[5] RCFC 26(a)(1)(A) requires parties to disclose the identity of any "individual likely to have discoverable information that the

[5] This Court has applied other circuits' reading of Fed. R. Civ. P. 37 to RCFC 37(c). Thus, it has found that "the sanction of exclusion [under Rule 37] is automatic and mandatory unless the sanctioned party can show that its violation [of Rule 26] was either justified or harmless." Tritek Technologies, Inc. v. United States, 63 Fed. Cl. 740, (2005). "In determining whether a failure to disclose can be considered substantially justified or harmless, the circuit courts have developed various multi-pronged tests. Although each variation has certain idiosyncracies, they largely seem to address at least some combination of the following factors: (1) surprise to the party against whom the evidence would be offered; (2) the importance of the information withheld; and (3) the explanation for the failure to disclose the information." Id. "The burden is on the party facing sanctions to prove that the violation was justified or harmless." Id.

disclosing party may use to support its claims and defenses" and to identify the subjects on which those persons are knowledgeable. RCFC 26(a)(1)(A). Additionally, if a party later discovers that an RCFC 26(a) disclosure was materially incomplete when made, RCFC 26(e)(1) imposes a duty on the disclosing party to supplement the prior disclosure with the additional information, unless the information has been made known to the other party during the discovery process or in writing. RCFC 26(e)(1). This supplementation should occur at "appropriate intervals." Id. As described above, none of these eight witnesses were identified in TVA's RCFC 26(a)(1)(A) initial disclosures. Moreover, to the extent that any of these persons were identified during the discovery process, they were never identified in any manner that would have indicated that TVA planned to use them as witnesses to testify on the subjects now identified in its witness list. Rather than supplementing its RCFC 26(a)(1)(A) initial disclosures at an appropriate point in the discovery process that would have provided the Government an opportunity to depose these witnesses, TVA chose to lay behind the log and add them to its witness list after the close of discovery. Therefore, TVA should not be allowed to present the testimony of these eight previously undisclosed witnesses.

## III. ALTERNATIVELY, THE GOVERNMENT SHOULD BE ALLOWED TO DEPOSE TVA'S EIGHT PREVIOUSLY UNDISCLOSED WITNESSES BEFORE THEY TESTIFY

If the Court does not preclude TVA from presenting the testimony of its eight previously undisclosed witnesses, RCFC 37(c)(1) allows the Court to impose "other appropriate sanctions." At the very minimum, the Government should be provided with the opportunity that it lost as a result of TVA's actions: namely, the opportunity to allow its auditors to interview the six witnesses designated to testify on the audit issues (Mark J. Burzynski, C. Gayle Creamer, Roy J.

Galyon, Andrew W. Holmes, and Michael L. Turnbow on the "will call" list, and J. David Humphrey on the "may call" list) and, if necessary, to depose those witnesses to record their pretrial position on the issues, and the opportunity to depose Mr. Keys and Mr. Holton. See Globe Federal Savings Bank, F.S.B. v. United States, 61 Fed. Cl. 91, 100-01 (2004) (ordering pretrial depositions on two previously undisclosed rebuttal witnesses on an indirectly related subject rather than striking them from the witness list). Given that there are only five weeks remaining prior to trial and the large amount of work in which the Government must engage before trial begins, TVA's failure to disclose that any of these individuals had discoverable information, much less that they were potential trial witnesses, is highly prejudicial. Id. at 101 (fact that there were 11 weeks before trial was a factor in the Court's decision not to strike the witnesses in Globe). TVA's nondisclosure precluded the Government from developing its case with full knowledge of the anticipated evidence and in a manner that would allow efficiency in the case development and trial preparation process. We do not have adequate time or resources at this point in the litigation to prepare for and effectively conduct eight depositions while, at the same time, performing our other pretrial preparations. Nevertheless, if the Court does not preclude the introduction of testimony by these previously undisclosed individuals, we have no choice at this point but to reduce our focus on other trial preparation activities and interview and depose these newly disclosed witnesses before they testify as a means of minimizing the potential damage to the Government from the untimely disclosures. Although the Government will still be prejudiced by TVA's untimely disclosures under this course of action, we have no choice except to request these depositions as a means of attempting to minimize the prejudice of

this untimely disclosure to the greatest extent possible.[6] Additionally, to further minimize our prejudice, the Government is requesting the Court order that any depositions of any of the eight previously undisclosed witnesses be conducted at the offices of Government counsel in Washington, D.C.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court preclude TVA from presenting the testimony of its eight previously undisclosed witnesses; or, in the alternative, allow the Government the opportunity to allow its auditors to interview the six witnesses designated to testify on the audit issues (Mark J. Burzynski, C. Gayle Creamer, Roy J. Galyon, Andrew W. Holmes and Michael L. Turnbow on the "will call" list, and J. David Humphrey on the "may call" list) and, if necessary, to depose those witnesses, and the opportunity to depose Mr. Keys and Mr. Holton.

[6] In a telephone conference on May 11, 2005, TVA's counsel indicated that TVA would agree to provide the Government with the opportunity to depose any of the witnesses on TVA's "will call" list, but not those on its "may call" list. There is no rationale under the Rules of this Court for such a distinction, and the Government stands by its contention that the only "appropriate" alternative action the Court should consider is to provide the Government the opportunity to interview and depose all of the eight previously undisclosed TVA witnesses. In a letter dated May 12, 2005, TVA's counsel indicated that TVA may allow depositions of the other "may call" witnesses.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Sonia M. Orfield
SONIA M. ORFIELD
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

SHARON A. SNYDER
KEVIN B. CRAWFORD
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

May 13, 2005

CERTIFICATE OF FILING

I hereby certify that, on May 13, 2005, a copy of the foregoing "Defendant's Motion *In Limine* to Exclude Testimony from Undisclosed Witnesses and Motion for Expedited Consideration" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sonia M. Orfield