IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-249C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TVA TESTIMONY BASED ON THE GOVERNMENT'S MODEL OF TVA'S COSTS IN THE BUT FOR WORLD AND MOTION FOR EXPEDITED CONSIDERATION

In response to a conversation with counsel for plaintiff, Tennessee Valley Authority ("TVA"), that it intends to run a model that was developed by the Government's expert witness, Raymond S. Hartman, and input different evidentiary assumptions, and to present testimony on its results at trial, defendant, the United States, respectfully requests that any such evidence be excluded upon the grounds that it is contrary to Federal Rules of Evidence ("Fed. R. Evid.") 701 and 602, and because its use should not be permitted at trial pursuant to Rule 37(c) of the Rules of the United States Court of Federal Claims ("RCFC").

BACKGROUND

Mr. Hartman, an economist, developed a model to evaluate whether certain costs would have been incurred in the but-for world, and to quantify those costs, in order to determine whether TVA had improperly attributed costs to the Department of Energy's ("DOE's") delay in accepting spent nuclear fuel that it would have incurred regardless of DOE's delay, and to reduce TVA's claim by any such amount. Mr. Hartman's model ("the GMA Model") uses a calculation method for the projection of future civilian spent nuclear fuel discharges used by DOE ("the

DOE Model") as a starting point. The DOE Model has two components. The first is a highly technical forecasting model that projects every SNF discharge for every operating reactor in the United States through the end of its life using the data reported by all commercial utilities on their RW-859 forms. The second component is comprised of an algorithm that calculates and forecasts the Annual Capacity Report ("ACR") priority ranking for all reactors in the United States given any assumptions regarding the first year that spent nuclear fuel ("SNF") acceptance occurs and the total acceptance rates for each year. For the purposes of this litigation, DOE also prepared a version of its model that replaced TVA's RW-859 data with data provided by TVA during discovery.

The GMA Model uses the outputs for TVA's reactors from both components of the DOE Model, run with both RW-859 data only, and with the new data produced in discovery. The GMA Model uses the first component of the DOE Model to track how much spent nuclear fuel will be discharged by each of TVA's reactors through end of life. The GMA Model uses the second component of the DOE Model to track TVA's given allocation of DOE acceptance for each year going as far into the future as necessary to accept all SNF that is generated. Using the results from the DOE Model as inputs, the GMA Model employs a set of calculations and algorithms to determine cost-effective strategies to use TVA's SNF allocations. This process allowed Mr. Hartman to evaluate TVA's need to construct dry storage in the but-for world for three different rates of fuel acceptance by DOE.[1]

---

[1] Although the Court has determined that, for the purposes of this case, DOE's acceptance rate is that set forth in the 1995 ACR, that document only provides a rate for the first ten year of spent fuel acceptance. See Tennessee Valley Authority v. United States, 60 Fed. Cl. 665, 669, 673 (2004). The rate for subsequent years has not been determined for the purposes of this case.
(continued...)

TVA has indicated that it intends to run Mr. Hartman's model using a fourth acceptance rate. TVA has not, however, identified any expert witnesses or provided any expert reports to the Government.[2] Thus, as the contemplated testimony plainly exceeds the scope of proper lay opinion testimony under Federal Rule of Evidence 701, and lacks the first-hand knowledge required by Fed. R. Evid. 602, the Government requests that the Court prevent TVA from presenting any such testimony at trial. TVA's anticipated testimony should also be excluded under RCFC 37(c), as TVA did not disclose any expert witness as required by RCFC 26(a). Because there is little time remaining prior to trial, defendant respectfully requests expedited consideration of this motion.

## ARGUMENT

### I. The Court Has the Power and the Duty to Grant Motions *in Limine* to Limit the Scope of Trial in Appropriate Circumstances

This Court has acknowledged that "[a] motion *in limine* is a recognized method under [RCFC] 16 and Fed. R. Civ. P. 16 for obtaining a pretrial order simplifying issues for trial," White Mountain Apache Tribe of Az. v. United States, 10 Cl. Ct. 115, 116 (1986), and "is a useful tool to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." Baskett v. United States, 2 Cl. Ct. 356, 367-68 (1983); see Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir. 1986) (motion *in limine* is useful to "resolve issues which would otherwise 'clutter up' the trial"). In fact, as this Court has previously

[1] (...continued)
The rate in later years, however, is essential to determining whether TVA would have had to build an ISFSI in the but-for world, only at a later date.

[2] TVA's Exhibit List does include what appear to be TVA's own runs of the model at Exhibit number 75-79, but TVA has not provided these materials to the Government.

acknowledged, the Court has a duty to exercise its power to exclude testimony or evidence in appropriate cases:

> There is no question under [RCFC] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial. Not only does this court have such power, it has a duty to exercise it in appropriate cases. This power allows the court, *inter alia*, to define the issues, facts, and theories actually in contention and to weed out extraneous issues. Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence.

Baskett, 2 Cl. Ct. at 359 (emphasis added).

II. TVA's Proposed Testimony Should Be Excluded Under Fed. R. Evid. 701 and 602 Because it is Not Proper Lay Witness Testimony and Was Not Disclosed As Expert Testimony

The Court should exercise its authority here to exclude TVA's proposed testimony under Fed. R. Evid. 701 and 602. Federal Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701 (emphasis added). Thus, testimony must comply with each of the three clauses of the rule in order to be admissible. Here, the testimony that TVA intends to present may not be permitted under either the first clause or the third clause of the rule.

"Limitation (a) is the familiar requirement of first hand knowledge or observation." Fed. R. Evid. 701 advisory committee's note. This "portion of the rule, of course, is 'no more than a restatement of the traditional [Fed. R. Evid. 602] requirement that most witness testimony be

based on first-hand knowledge or observation.'" Cuyahoga Metropolitan Housing Authority v. United States, 60 Fed. Cl. 481, 482 (2004) (quoting Weinstein's Federal Evidence § 701.03[1]). "Fed. R. Evid. 602 requires that 'evidence [be] introduced sufficient to support a finding that the witness has personal knowledge of the matter.' A witness is deemed qualified to testify unless no reasonable juror or court 'could believe that the witness had the ability and opportunity to perceive the event [about which] he testifies.'" Boston Edison Co. v. United States, 64 Fed. Cl. 167, 181 (2005) (alteration in original) (citation omitted). "Under [Fed. R. Evid.] 701, 'a lay opinion must be one that a normal person would form from those perceptions. . . .' In particular, the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those fact.'" Texas A&M Research Foundation, v. Magna Transportation, Inc., 338 F.3d 394, 403 (5th Cir. 2003). "Expert opinion, by contrast, need not be based on first-hand knowledge of the facts of the case. It brings to an appraisal of those facts a scientific, technological, or other specialized knowledge that the lay person cannot be expected to possess." United States v. Conn, 297 F.3d 548, 554 (7th Cir. 2002).

In conducting Fed. R. Evid. 701(a) analyses, courts have carefully considered the source of the information upon which the witness is relying. Where the information upon which the witness relied came primarily from others, and the witness "did not independently verify much of that information," courts have found that the lay witness "had no basis upon which to offer lay opinion testimony. . . ." JGR, Inc. v. Thomasville Furniture Industries, Inc., 370 F.3d 519, 526 (6th Cir. 2004); see also Bank of China v. NBM LLC, 359 F.3d 171,181 (2nd Cir. 2004) ("The admission of this testimony pursuant to Rule 701 was error because it was not based entirely on Huang's perceptions."). For example, where a witness relied on his colleagues to provide him

with comparable projects, or make "threshold determinations" from which he and his colleagues then extrapolated operating expenses, this court has found that "he did not have the requisite, first-hand personal knowledge required by Rule 701." Cuyahoga Metropolitan Housing Authority, 60 Fed. Cl. at 482.

TVA's proffered testimony suffers from this same defect. The TVA witness will be using a model of which he has no personal knowledge. As an initial matter, no TVA personnel have been involved in the design, maintenance, or use of the DOE model, which serves as the foundation for the GMA model, nor have they even had access to DOE personnel familiar with the model to gain an understanding of the model through them. Likewise, no TVA witness was involved in GMA's refinement of the DOE Model. Both the DOE model and the GMA model encompass numerous "threshold determinations" of the type made by the witnesses' colleagues in the Cuyahoga case. The DOE Model reflects DOE's assumptions about the future practices of the nuclear generating industry based on its unique knowledge of not only TVA's nuclear reactors, but all the reactors in the nuclear industry. The GMA Model has developed a priority system that identifies cost-effective strategies and assumptions. In other words, when numerous choices need to be made regarding SNF fuel inventory management, the GMA Model uses economic assumptions to identify choices that lead to cost-effective results. Furthermore, the GMA Model tracks each of TVA's SNF storage pools separately and looks into the future to the end of each reactor's life. Thus, even were a TVA witness to acquire some independent understanding of these models, his lack of personal knowledge would still disqualify him from testifying on this topic. See Cuyahoga Metropolitan Housing Authority, 60 Fed. Cl. at 482.

TVA's proffered testimony must also be excluded under Fed. R. Evid. 701(c). That

clause was added in 2000 "to emphasize that lay opinion testimony is limited to those observations of a lay witness that are 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" Conn, 297 F.3d at 553. "Before the 2000 amendment to Rule 701, some courts had become more lenient in the admission of lay opinion on subjects appropriate for expert testimony." Id. (citing 29 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure: Evidence § 6253, at 119-23 (1997)). The amendment "eliminate[s] the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note. Specifically, "'[t]he amendment incorporates the distinctions set forth in State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992), a case involving former Tennessee Rule of Evidence 701, a rule that precluded lay witness testimony based on 'special knowledge.' In Brown, the court declared that the distinction between lay and expert witness testimony is that lay testimony 'results from a process or reasoning familiar in everyday life,' while expert testimony 'results from a process or reasoning which can be mastered only by specialists in the field.'" Cuyahoga Metropolitan Housing Authority, 60 Fed. Cl. at 483 (quoting Fed. R. Evid. 701 advisory committee's note).

TVA's anticipated testimony fits squarely into the later category. Modeling what TVA's storage needs would have been had DOE commenced acceptance of spent nuclear fuel at various rates can hardly be said to involve a "a process or reasoning familiar in everyday life." Rather, it reflects several areas of specialized knowledge, including the knowledge regarding the operating characteristics of all operating nuclear reactors in the United States and the trends and activities of the entire industry as a whole reflected in the DOE Model. It also involves

specialized knowledge from the field of economics, such as microeconomics and industrial organization, and expertise based on the extensive economic study of the structure, conduct, and performance of participants in many different markets and industries, especially the energy industry, that are used in the GMA Model to develop assumptions and calculations to arrive at cost-effective solutions. Thus, this testimony cannot be admitted under Fed. R. Evid. 701(c). See also Bank of China v. NBM, LLC, 359 F.3d at 182 (2nd Cir. 2004) ("to the extent Huang's testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was error."); Conn, 297 F.3d at 555 ("Agent McCart's testimony was . . . based on his accumulated expertise obtained through experience and training. . . . Testimony of this nature is expert testimony; it could have been offered by any individual with specialized knowledge of the collector's market in firearms.")

Other factors also militate against admission under Rule 701(c). "[I]t should not be overlooked that [such testimony would] effectively answer[] hypothetical questions . . . ," as the testimony would address the hypothetical but-for world. Cuyahoga Metropolitan Housing Authority, 60 Fed. Cl. at 484. "[A]nswering such conditional questions is also generally reserved for experts qualified under Rule 702. A contrary ruling allowing [plaintiff] to offer this same testimony through a lay witness, would again thwart the purpose of Rule 701(c). . . ." Id. (citing Certain Underwriters at Lloyd's v. Sinkovich, 232 F.3d 200, 203-204 (4th Cir. 2000) (court erred in permitting lay witness to testify in form of responses to hypothetical or like questions that required specialized knowledge to answer); Teen-Ed, Inc. v. Kimball, Int'l, Inc., 620 F.2d 399, 404 (3rd Cir. 1980) ("essential difference" between lay witness testifying under

Fed. R. Evid. 701 and qualified expert testifying under Fed. R. Evid. 702 is that "qualified expert may answer hypothetical questions.").

Finally, TVA's proffered testimony would also run afoul of another purpose of Rule 701(c). "By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26. . . by simply calling an expert witness in the guise of a layperson. Fed. R. Evid. 701 advisory committee's note (citing Joeseph, Emerging Expert Issues Under the 1933 Disclosure Requirements to the Federal Rules of Civil Procedure, 164 F.R.D. 97, 108 (1996) (noting that "there is no good reason to allow what is essentially surprise expert testimony" and that "the Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process.")). Here TVA has planed just such an evasion of the disclosure requirement. Although the court's scheduling order required TVA to submit its expert reports by December 1, 2004, TVA did not submit any expert reports at that time, nor did it otherwise disclose the proposed testimony. Indeed, it is not even clear today from TVA's witness list who will present this testimony. Thus, TVA should be prevented from surprising the Government with this testimony at trial under Fed. R. Evid. 701(c).

## III. TVA's Proposed Testimony Should Also Be Excluded Under RCFC 37 (c) Because It Was Not Disclosed as Expert Testimony

The Government also asks that TVA's anticipated testimony be excluded under RCFC 37(c) because it was not disclosed to the Government at the time required by the Court's order. Rule 37(c) explicitly provides that "a party that without substantial justification fails to disclose information required by RCFC 26(a) . . . is not, unless such failure is harmless, permitted to use

as evidence at trial . . . any witness. . . not so disclosed." RCFC 26(a)(2)(A) provides that "[i]n addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rule[] 702. . . ." RCFC 26(a)(2)(C) provides that "these disclosures shall be made at the times and in the sequence directed by the Court" or, in the absence of other direction, "at least 70 days before the scheduled close of discovery."

This Court has applied other circuits' reading of Fed. R. Civ. P. 37 to RCFC 37(c). Thus, it has found that "the sanction of exclusion [under Rule 37] is automatic and mandatory unless the sanctioned party can show that its violation [of Rule 26] was either justified or harmless." Tritek Technologies, Inc. v. United States, 63 Fed. Cl. 740, 750 (2005). "In determining whether a failure to disclose can be considered substantially justified or harmless, the circuit courts have developed various multi-pronged tests. Although each variation has certain idiosyncracies, they largely seem to address at least some combination of the following factors: (1) surprise to the party against whom the evidence would be offered; (2) the importance of the information withheld; and (3) the explanation for the failure to disclose the information." Id. "The burden is on the party facing sanctions to prove that the violation was justified or harmless." Id.

Here, the Government would certainly be "surprised" by TVA presenting expert testimony running the GMA model with different assumptions. The Government only recently learned of TVA's plans to present this testimony through a conversation with counsel. To date, the Government has not been advised who will present this testimony, been provided with the results of TVA's run of the GMA model, or had an opportunity to depose the witness regarding his model results.

Likewise, the withheld information is clearly important to the Government's case. Had the Government received TVA's projections at the time and in the sequence directed by the Court, the Government would have pursued additional factual discovery on the underpinnings of TVA's assumptions, would have deposed TVA's expert regarding the model, and may have augmented the range of issues addressed in its expert reports as a result. See id. ("The withheld information was important to Plaintiff's case because it was information that Plaintiff needed to refine its theories of infringement . . . .").

Likewise, there is no explanation for TVA's failure to disclose its expert witness. TVA's own documents reflect that it was aware that the rate of acceptance in the but-for world could be relevant to showing whether it would have still had to build an ISFSI in the absence of DOE's delay. See the Declaration of Thomas L. Hayslett attached to TVA's Motion for Summary Judgment. TVA certainly had access to its own up-to-date projections of its spent fuel discharge with which to model this issue. Moreover, based on the conduct of other the other spent nuclear fuel trials, which TVA has been following, TVA would have already known of outside candidates to serve as an expert witness. As there is no justification for TVA's failure to timely disclose its expert testimony, and that failure has harmed the Government, it should not be allowed to present this testimony at trial.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Sonia M. Orfield
SONIA M. ORFIELD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-0534
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

ALAN LO RE
Senior Trial Counsel

KEVIN B. CRAWFORD
SHARON A. SNYDER
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

May 13, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that, on this 13th day of May 2005, a copy of the foregoing "Defendant's Motion *in Limine* to Exclude TVA Testimony Based on the Government's Model of TVA's Costs in the but-for World," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sonia M. Orfield