IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TENNESSEE VALLEY AUTHORITY<br>Plaintiff<br><br>v.<br><br>UNITED STATES<br>Defendant | No. 01-249-C<br>(Judge Lettow) |

**TVA'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY FROM UNDISCLOSED WITNESSES AND MOTION FOR EXPEDITED CONSIDERATION**

Although Defendant complains that TVA did not previously disclose to Defendant the identity of eight persons listed as planned or potential TVA witnesses, Defendant ignores totally the nature of the testimony expected to be given by these witnesses, that is, each is expected to respond solely to narrow issues raised in the expert reports and subsequent testimony of two of Defendant's experts, Stephen J, Kiraly and Raymond S. Hartman. These expert reports were received by TVA on March 30, 2005, and TVA took the deposition of Mr. Hartman on April 21 and Mr. Kiraly on April 27.

Until the reports had been received and analyzed and the depositions taken, it was unclear to TVA the extent to which TVA would need to supplement the testimony of its primary witnesses. In fact, the very absence of any reference to most of these individuals either in TVA's initial disclosures or in the more than 150,000 pages of discovery provided by TVA to Defendant confirms both the specialized nature of their testimony and the fact that TVA did not anticipate until recently that their testimony would be required.

Nevertheless, because TVA now has had additional time to consider the testimony it wishes to present in response to Defendant's expert reports, TVA hereby withdraws the following persons from its witness list: Mark J. Burzynski, C. Gayle Creamer, T. A. Keys, David J. Humphrey, and Michael L. Turnbow. Accordingly, only the proposed testimony of Andrew W. Holmes, Roy Galyon, and George M. Holton Jr. remains at issue.

As to the designation of Mr. Holton, TVA disagrees that Defendant was unaware of his existence or of the possibility he might be called as a witness. TVA counsel orally informed counsel for Defendant in late summer 2004 that one of the witnesses on TVA's initial disclosures, Perry Lawrence, had been replaced by George M. Laurie, and that another of the initially listed witnesses, Donald L. Hutson, had been replaced by George M. Holton Jr. Even were Defendant to dispute this notification by TVA counsel, Defendant cannot deny that, in the late fall of 2004, Mr. Hutson and Thomas L. Hayslett each testified in deposition that Mr. Hutson's responsibilities in TVA's Nuclear Fuels organization had been taken over by Mr. Holton. Accordingly, Defendant was fully on notice about Mr. Holton's existence and job responsibilities and had ample opportunity to take his deposition.[1]

---

[1] Defendant's decision not to take Mr. Holton's deposition may have been driven by Defendant's consistent position, repeated as late as February 7, 2005 in interrogatory answers, that discovery about acceptance rates after year 10 was not relevant:

> Although further fact discovery by the Government may demonstrate that the acceptance rate at which the Department of Energy was obligated to have accepted spent nuclear fuel after the first 10 years of SNF acceptance in the absence of any breach may be relevant to determining whether TVA's need for an ISFSI was caused by defendant's breach, such determinations are premature at this time.

As to the designations of Andrew W. Holmes and Roy Galyon (who, as TVA previously informed Defendant are expected to testify for a total of less than 1.5 hours), their planned testimony is limited to a very narrow set of issues raised by the expert report of Mr. Kiraly.[2] Mr. Holmes is expected to testify primarily about proof that TVA paid its incurred costs. This issue was not raised by Defendant prior to the expert report of Stephen J. Kiraly and was not wholly clarified for TVA until Mr. Kiraly's deposition on April 28 because TVA had continued to supply additional financial materials as requested by counsel for Defendant throughout March and April 2005.

Moreover, although TVA requested that Defendant inform TVA as to whether Defendant intended to question payment at trial (most recently by Federal Express letter dated May 5, 2005 which requested an immediate response), so that TVA could make appropriate arrangements for testimony were that the case, the Government never responded to TVA's request (Exhibit 2, less enclosures). Similarly, as to the accounting issue regarding an allowance for funds used during construction (AFUDC), counsel for Defendant at one point suggested to TVA counsel that a stipulation regarding AFUDC might be possible and wrote to TVA on March 12, 2005, indicating both that TVA had presented very thorough and detailed information regarding AFUDC calculations and that TVA would be informed as soon as possible whether this item could be closed out from an audit perspective. Instead, Mr. Kiraly in his report and deposition

---

(Exhibit 1, excerpted, at 8-9.) Defendant now contends that acceptance rates after year 10 are relevant to show that TVA's damages should be reduced.

[2] Although TVA does not dispute that Defendant may have been unaware of the identity of these two individual TVA witnesses, Defendant was aware of the organizations that these witnesses manage and the nature of the responsibilities of those organizations. Had Defendant wished to gather information about those organizations, Defendant was free to serve a Rule 30(b)(6) notice upon TVA.

disclaimed that sufficient information had been made available and added that TVA had not shown that AFUDC costs were incremental. Accordingly, TVA named Mr. Holmes as a trial witness.

As to the designation of Mr. Galyon, TVA learned at the deposition of Mr. Kiraly that its efforts to satisfy Mr. Kiraly's questions about TVA's Heavy Equipment Division practices had been deemed lacking. Accordingly, TVA designated Mr. Galyon to provide brief testimony on the issue.

In sum, TVA did not "lay behind the log" (mot. at 5) but rather had to deal with issues recently raised by Defendant in its expert reports. In this regard, although TVA does not think that Defendant has been prejudiced by TVA's designations, TVA does not oppose (as TVA previously informed Defendant) a telephonic interview or brief telephonic deposition of Mr. Holmes and/or Mr. Galyon.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to exclude testimony from undisclosed witnesses should be denied.

Respectfully submitted,

Electronically filed: May 17, 2005

Maureen H. Dunn
General Counsel

Edwin W. Small
Assistant General Counsel

s/Peter K. Shea

Peter K. Shea
Senior Attorney/Attorney of Record
Telephone 865-632-7319

Attorneys for Tennessee Valley Authority

Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Facsimile 865-632-6718

003735739

# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TENNESSEE VALLEY AUTHORITY<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 01-249C<br>(Judge Lettow) |

DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("CFC"), defendant, the United States, provides the following response to the second set of interrogatories served by plaintiff, Tennessee Valley Authority ("TVA"), which TVA served by mail on January 3, 2005. Defendant notes that TVA captioned its interrogatories as "Plaintiff TVA's First Set of Interrogatories," but TVA actually served its first set of interrogatories on September 24, 2004.

GENERAL OBJECTIONS

1. Defendant objects to each and every interrogatory to the extent that it calls for the disclosure of material or information that is subject to any claim of privilege or protection, including without limitation, the attorney-client privilege, the work-product doctrine, or any Government privilege.

2. Defendant objects to the instructions and definitions accompanying plaintiff's interrogatories to the extent that such instructions and definitions attempt to impose obligations on defendant other than those imposed by Rules 26 and 34 of the Rules of the United States Court of Federal Claims, ("RCFC") and the Court's prior orders, including but not limited to:

a. Any obligation to preserve and search for electronic mail, to the extent that it

INTERROGATORY NO. 3:

Explain all the reasons why DOE chose in its 1995 annual capacity report an acceptance rate for spent nuclear fuel that ramped up to 900 tons annually and continued thereafter at that rate until the tenth year.

RESPONSE:

Defendant objects to this interrogatory because it seeks schedule information about which plaintiff was required to complete discovery during the coordinated discovery proceedings. Defendant also objects to this interrogatory upon the grounds that it is so vague, broad, general, and all inclusive that it does not permit a proper or reasonable response and is, therefore, unduly burdensome and oppressive. Defendant further objects to this interrogatory to the extent that it seeks information that is not relevant to plaintiff's damages claims and is not reasonably calculated to lead to the discovery of admissible evidence. The Court has held in this matter that "TVA's claim is necessarily solely a claim for partial breach . . . . As such, TVA's current claim for damages cannot be viewed as encompassing future damages, and the Court declines to treat it as such." Tennessee Valley Authority v. United States, 60 Fed. Cl. 665, 677-78 (2004). Thus, the Court determined that "the scope of TVA's claims for redress of partial, ongoing breach of the TVA Contract by the government shall be limited to damages incurred by TVA between the initial date of the government's breach and the end of TVA's most recently concluded fiscal year." Id. at 679. Although further fact discovery by the Government may demonstrate that the acceptance rate at which the Department of Energy was obligated to have accepted spent nuclear fuel after the first 10 years of SNF acceptance in the absence of a breach may be relevant to determining whether TVA's need for ISFSIs was caused by defendant's breach, such

determinations are premature at this time. Defendant also objects to this interrogatory to the extent that it overlaps or duplicates earlier discovery requests.

Without waiving these objections, defendant refers plaintiff to its response to Interrogatory No. 23 from "Defendant's Response to Utility Plaintiffs' Joint First Set Of Interrogatories," dated October 9, 2001, in which defendant responded to an interrogatory seeking the same information sought here.

INTERROGATORY NO. 18:

Identify all persons who provided information used in responding to the above interrogatories, listing with each such person's name the interrogatories for which he/she provided

RESPONSE:

Tom Pollog and David Zabransky provided information regarding interrogatories 1-5 and 8-17. Nanette Founds provided information regarding interrogatories 6-7.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

Sonia M. Orfield
SONIA M. ORFIELD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0534
Fax: (202) 307-2503

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

February 7, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on this 7th day of February, 2005, I caused to be served by Federal Express a copy of "Defendant's Response to Plaintiff's Second Set of Interrogatories," addressed as follows:

PETER K. SHEA
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902

[signature]

# EXHIBIT 2

TVA

Tennessee Valley Authority, 400 West Summit Hill Drive, Knoxville, Tennessee 37902-1401

May 5, 2005

Kevin B. Crawford, Esq.
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20005

TVA v. UNITED STATES — CIVIL ACTION NO. 01-249-C (JUDGE LETTOW)

Dear Mr. Crawford:

This letter is a follow up to several discussions we have had about TVA's "bank statements" in the context of evidence of payment for Electronic Funds Transfer (EFT) transactions and will supplement information previously provided. With regard to the specific wire transfer reference numbers (i.e., the "check numbers") identified on TVA's responses to the Government's requests for information, all "check" numbers beginning with a "9" (the majority) are paid through a Federal Reserve Bank Automated Clearing House (ACH) to which TVA electronically transfers batch files consisting of individual electronic payment requests with unique ACH numbers. The only receipt TVA receives for these transactions is an "End-of-Day Settlement" (copy for April 29, 2005 enclosed) which simply provides a daily gross total for various electronic transactions. Only the Federal Reserve Bank via which the ultimate transfers were made (currently Atlanta for all ACH transactions) can trace an individual reference number to the destination bank account.

However, a "check" reference number beginning with an "8" represents a "Fedwire" transfer that is more akin to the traditional wire transfer envisioned by Mr. Kiraly. It is possible to retrieve a bank confirmation for such individual accounts. Therefore, to the extent such records are available at TVA, we have enclosed copies of the documentation requested in your March 12, 2005 letter. As with the ACH transactions, the wire payment amount may not necessarily match an individual invoice as several invoices are frequently paid as part of one transaction; therefore we have provided information as to all invoices paid by the transfer. Because Fedwire transaction detail documentation is maintained on site for only a limited period (currently from FY2002 forward) before being sent to record storage, we do not have data for each item requested

In sum, little of the information is readily available; and all of it is burdensome to retrieve. As you know, TVA's books show that the claimed costs have been incurred, and there is not an iota of evidence that the payments have not been made. Indeed, viewed from any perspective other than that of Mr. Kiraly, all the evidence regarding payments of any nature by TVA in connection with the costs incurred in the ISFSI projects is to the contrary. Accordingly, we are requesting that you inform us immediately whether the Government intends to contest payment both as to internal charges and as to third parties so that we can either avoid wasting time on what should not be an issue or make the appropriate arrangements for trial testimony.

With regard to other pending matters, we have not received a copy of the database requested during Mr. Kiraly's deposition and hereby renew our request. Also, we understand from Mr. Kiraly's deposition that he now has seen sufficient evidence of TVA's contractual obligations to third parties for work performed; if this understanding is incorrect, please inform us.

Please call me if you have any questions.

Sincerely,

Peter K. Shea

Peter K. Shea
Senior Attorney

Telephone865-632-7319
Facsimile 865-632-6718

By Federal Express
Enclosures
cc: Sonia M. Orfield, Esq.

003735209